ATLANTIC MUTUAL INSURANCE COMPANY *et al.*, Plaintiffs-Appellees, v. AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS *et al.*, Defendants-Appellants.

First District (5th Division)    No. 1—98—2670

Opinion filed July 14, 2000.

Donohue, Brown, Mathewson & Smyth, of Chicago (Norman J. Barry, Jr., Karen Kies DeGrand, and Eleanor P. Cabrere, of counsel), for appellants.

Clausen Miller P.C., of Chicago (James T. Ferrini, Lisa Marco Kouba, and Melinda S. Kollross, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

Plaintiffs, Atlantic Mutual Insurance Company (Atlantic Mutual) and Centennial Insurance Company (Centennial), filed a complaint for declaratory judgment seeking a determination of whether they owed defendants, the American Academy of Orthopaedic Surgeons (AAOS) and the Scoliosis Research Society (SRS) (collectively, defendants), a duty to defend or indemnify them for civil conspiracy and concert of action claims brought against them in underlying mass product liability litigation. Defendants filed a motion to dismiss plaintiffs' complaint for failure to name necessary parties which the trial court denied. The trial court also denied defendants' motion to compel discovery of various documents and witnesses. Subsequently, plaintiffs

filed a motion for summary judgment and argued that they had no duty to defend or indemnify defendants in the underlying suit. The trial court granted summary judgment in favor of plaintiffs and ruled that the causes of action contained in the underlying suit were not covered under the insurance policies issued to AAOS and SRS; therefore, plaintiffs had no duty to defend or indemnify AAOS and SRS. On appeal, defendants contend that: (1) Atlantic Mutual and Centennial have a duty to defend AAOS and SRS where the underlying complaint does not allege that AAOS and SRS "expected or intended" to injure the underlying plaintiffs; (2) the trial court erred in denying defendants' motion to dismiss for failure to join necessary parties; and (3) the trial court abused its discretion in ruling on plaintiffs' motion for summary judgment without allowing defendants to complete written discovery and depose witnesses. For the reasons that follow, we affirm.

The underlying litigation involves numerous cases brought against AAOS, SRS and others as a result of complications from the implantation of pedicle screw fixation devices. The complaints have been consolidated into a multidistrict litigation action entitled, *In re: Orthopaedic Bone Screw Products Liability Litigation*, which is currently pending in the United States District Court for the Eastern District of Pennsylvania.[1]

Pedicle screw fixation devices are designed to be used in spinal fusion surgery. These devices are used to fuse two or more vertebrae together in order to correct various spinal conditions. According to the underlying complaint, pedicle screw fixation devices are classified by the Food and Drug Administration (FDA) as Class III devices, which means that they "present a potential unreasonable risk of illness or injury" and therefore must receive premarket approval from the FDA before they may be commercially sold or distributed. In order to generate the required scientific evidence to allow approval, the FDA granted pedicle screw manufacturers permission to conduct numerous clinical trials from 1986 through 1993. According to the underlying complaint, these clinical trials failed to provide sufficient evidence to support a successful application for premarket approval. The underlying complaint alleges that, despite the lack of premarket approval for these devices, pedicle screw manufacturers promoted, marketed, distributed, and sold devices that were intended for use as pedicle screw fixation devices. The complaint further alleges that hundreds of thousands of

---

[1]The parties have submitted the "Hruby Amended Complaint" and agree that the allegations contained therein are representative of all pedicle screw fixation claims pending against AAOS and SRS.

individuals were surgically implanted with these devices despite a lack of adequate evidence that these devices were safe and effective when used in this manner.

AAOS is a professional organization comprised of orthopaedic surgeons, some of whom specialize in spine surgery. SRS is a professional organization comprised of spine surgeons who are admitted to membership by invitation only. AAOS and SRS are named defendants in approximately 500 of these pedicle screw fixation device cases. Civil conspiracy and concert of action claims were specifically brought against AAOS and SRS.

The civil conspiracy claim alleges that from the middle of 1988 through early 1989 pedicle screw manufacturers and various medical societies, including AAOS and SRS, "reached an agreement, understanding, and a meeting of the minds" to pursue an "intercompany/ association conspiracy" which was described as follows:

> "The purpose of the intercompany/association conspiracy, to which each member of the conspiracy agreed, was to promote, market, distribute, and sell medical devices intended for use as pedicle screw fixation devices, to do so through deceptive and misleading means and thereby to:
>
> a) cause pedicle screw fixation devices to be introduced, delivered and/or received in interstate commerce as Class III devices without premarket approval ***;
>
> b) promote such devices as pedicle screw fixation devices and represent to spine surgeons that such devices were safe and effective when used as pedicle screw fixation devices, even though such devices were 'investigational devices' *** and pedicle screw fixation surgery was an 'investigational use' under FDA regulations; and
>
> c) engage in deception."

The underlying complaint further alleges that AAOS and SRS, along with other professional associations, participated in the conspiracy because "they recognized that they could capitalize on the manufacturers' interest in promoting pedicle screw fixation devices through the associations by obtaining significant financial compensation and remuneration from manufacturers for doing so." The underlying complaint then alleges the following:

> "The participating manufacturers and sellers of pedicle screw fixation devices would provide the participating professional associations and others with grants, contributions, fees, and other remuneration to sponsor or conduct seminars, workshops, conferences and symposia which were directed to spine surgeons and which promoted pedicle screw fixation surgery.
>
> * * *
>
> *** [U]nder the scheme adopted and implemented pursuant to

the intercompany/association conspiracy, these seminars, workshops, conferences and symposia were really sales events where those who participated in the intercompany/association conspiracy attempted to create or expand a market for the sale of pedicle screw fixation devices and to obtain from the participants sales of the devices for use in pedicle screw fixation surgery."

The complaint alleges that, by engaging in such deceptive conduct, defendants acted in reckless disregard of the risk that the acts in furtherance of the conspiracy would result in the distribution of medical devices that were untested and unproven for their intended use and exposed numerous plaintiffs in the underlying complaints to substantial and serious risks of painful and disabling injuries.

Regarding causation and injury, the complaint alleges that the purpose of the intercompany/association conspiracy was "to cause *** pedicle screw fixation devices to be placed into commerce and to be used in patients" and that "as a direct, proximate and reasonably foreseeable result, *** plaintiff has suffered and will continue to suffer physical harm."

The concert of action claim realleges the allegations in the conspiracy claim and further alleges that the participants in the intercompany/association conspiracy knew that the conduct of the pedicle screw manufacturers "constituted a breach of such duties and nonetheless provided substantial assistance or encouragement for such conduct" and that "the participants in the intercompany/association conspiracy committed tortious acts in concert with [the pedicle screw manufacturers] and pursuant to a common design."

According to the complaint, AAOS received approximately $815,562 in workshop, exhibit, registration and other fees and conducted approximately 13 symposia on pedicle screw fixation. SRS received approximately $440,000 from manufacturers and distributors of pedicle screw fixation devices through donations and payment for seminars and conducted at least nine national symposia on pedicle screw fixation.

Plaintiffs Atlantic Mutual and Centennial issued comprehensive general liability (CGL) insurance policies to defendants from August 23, 1984, to August 25, 1991. It is undisputed that SRS was not an insured under the Centennial policy in effect from August 25, 1984, to August 25, 1985. It is further undisputed that none of the Centennial or Atlantic Mutual policies provide coverage for claims asserted against AAOS or SRS where the pedicle screw device was implanted after August 25, 1991. AAOS and SRS did not dispute the entry of summary judgment in the trial court on these two issues and they do not appeal this aspect of the trial court's order. Federal Insurance

Company, also named as a defendant in the declaratory judgment action as an interested party, issued general liability policies to AAOS and SRS during the relevant time period.

On April 21, 1997, Atlantic Mutual and Centennial filed a complaint for declaratory judgment and alleged, *inter alia*, that the complaints pending against AAOS and SRS failed to allege an "occurrence" as defined in the insurance policies of Atlantic Mutual and Centennial and that the Atlantic Mutual policy contains a bodily injury exclusion which precludes coverage.

On June 20, 1997, AAOS and SRS filed a motion to dismiss plaintiffs' complaint for declaratory judgment. Defendants' motion to dismiss is not a part of the record. Defendants' memorandum in support of their motion to dismiss, which is contained in the record, argued that plaintiffs failed to name all insurance carriers providing coverage for the products liability litigation and that these "absent insurers" were necessary and indispensable parties pursuant to section 2—405(a) of the Code of Civil Procedure. 735 ILCS 5/2—405(a) (West 1996). Therefore, defendants requested that these absent insurers be joined as defendants or, in the alternative, that plaintiffs' complaint for declaratory judgment be dismissed.

In response, plaintiffs argued that these "absent insurers" did not satisfy the definition of necessary parties because the coverage that they provided was not the same type of coverage as that provided by plaintiffs. These absent insurers did not provide defendants with CGL policies. Rather, according to plaintiffs, these absent insurers provided "Media/Special Perils" policies and "Non-Profit/Professional Liability" insurance policies, which are of a highly specialized nature and therefore different in kind from CGL policies. Following a hearing, the trial court denied defendants' motion to dismiss plaintiffs' complaint for failure to name necessary and indispensable parties.

Plaintiffs filed a motion for summary judgment and argued that summary judgment was proper because the underlying civil conspiracy and concert of action claims did not constitute "occurrences" and/or were excluded from coverage by the intentional act exclusion provision in the policy. Plaintiffs further asserted that the injuries were expected as a matter of law.

Defendants then filed a motion to compel the production of reinsurance documents and argued that these documents could potentially reveal information plaintiffs disclosed to their reinsurers regarding plaintiffs' assessment of their coverage under the policies. These documents were submitted to the trial court for *in camera* review.

Defendants also sought to compel the production of organizational charts and a claims manual. The trial court conducted an *in camera*

review of the claims manual. Defendants additionally sought to depose an Atlantic Mutual employee regarding a letter he had written to an insurance producer in which he stated that Atlantic Mutual's insurance policies were "filled with inconsistencies." Defendants also sought to depose the Atlantic Mutual employee who had responsibility to review the underlying claims. Subsequently, each of defendants' discovery requests was denied.

Following a hearing, the trial court granted plaintiffs' motion for summary judgment. The court found that the conspiracy and concert of action claims against AAOS and SRS were not covered under the Atlantic Mutual or Centennial policies; therefore, plaintiffs had no duty to defend or indemnify them. Defendants' timely appeal followed.

Defendants first contend that the trial court erred in granting summary judgment in favor of plaintiffs because according to the allegations contained in the underlying complaint, plaintiffs have a duty to defend AAOS and SRS.

■ Initially, we note that a reviewing court conducts a *de novo* review of the evidence in summary judgment cases. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113, 649 N.E.2d 1323 (1995). The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party. *Espinoza*, 165 Ill. 2d at 113. Where the pleadings, depositions and affidavits show that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *First of America Trust Co. v. First Illini Bancorp, Inc.*, 289 Ill. App. 3d 276, 283, 685 N.E.2d 351 (1997). If reasonable persons could draw different inferences from undisputed facts, summary judgment should be denied. *Smith v. Armor Plus Co.*, 248 Ill. App. 3d 831, 839, 617 N.E.2d 1346 (1993).

■ An insurer's duty to defend its insured is broader than its duty to indemnify. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125, 607 N.E.2d 1204 (1992). In determining whether an insurer owes its insured a duty to defend, the court must look to the allegations of the underlying complaint in comparison to the relevant insurance policy provisions. *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 500, 698 N.E.2d 271 (1998). If the underlying complaint alleges facts within or potentially within policy coverage, the insurer is obligated to defend its insured, even if the allegations are groundless, false or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). In order for the insurer to justifiably refuse to defend the insured, it must be "clear from the face of the underlying complaints that the allegations fail to state facts" which bring the cause within or potentially within coverage. (Emphasis omitted.) *United States Fidelity &*

*Guaranty Co.*, 144 Ill. 2d at 73. Furthermore, if the insurer relies on an exclusionary provision, it must be "clear and free from doubt" that the policy's exclusion prevents coverage. *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 564, 571 N.E.2d 256 (1991). Additionally, we must liberally construe the underlying complaint and the insurance policy in favor of the insured. *United States Fidelity & Guaranty Co.*, 144 Ill. 2d at 74.

In accordance with the above propositions of law, we must analyze the underlying complaint in light of the applicable policy provisions to determine whether the claim is within or potentially within coverage. Both Atlantic Mutual and Centennial rely on portions of their CGL policies that provide coverage only for bodily injury caused by an "occurrence" as defined in their respective policies.

Centennial's CGL policy provides the following:

> "This company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. personal injury or B. property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient ***."

The Centennial CGL policy defines "occurrence" as follows:

> "[A]n accident, including continuous or repeated exposure to conditions which results in personal injury or property damage *neither expected nor intended from the standpoint of the insured*." (Emphasis added.)

The Centennial CGL policy definition of "personal injury" includes "bodily injury."

The Atlantic Mutual CGL policy provides the following:

> "[W]e will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies.
>
> * * *
>
> This insurance applies only to 'bodily injury' and 'property damage' which occurs during the policy period. The 'bodily injury' or 'property damage' must be caused by an 'occurrence.' "

Under the Atlantic Mutual CGL policy "occurrence" is defined as:

> "[A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The Atlantic Mutual CGL policy defines "bodily injury" as follows:

> " 'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

The definition of "bodily injury" provides an exclusion for " 'bodily injury' or 'property damage' *expected or intended from the standpoint of the insured."* (Emphasis added.)

■ We note that neither the Atlantic Mutual policy nor the Centennial policy defines "accident." We therefore look to Illinois case law for guidance as to the interpretation of this term. Illinois courts have defined "accident" as follows:

> "[A]n unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character." *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619, 411 N.E.2d 1157 (1980).

Citing this language, in *State Farm Fire & Casualty Co. v. Watters*, 268 Ill. App. 3d 501, 644 N.E.2d 492 (1994), *appeal denied*, 161 Ill. 2d 540, 649 N.E.2d 425 (1994), this court held that "an occurrence which is defined as an accident involves the consideration of whether the injury was expected or intended from the standpoint of the insured." *State Farm Fire & Casualty Co.*, 268 Ill. App. 3d at 506.

■ Under Illinois law addressing the definition of "occurrence," the issue that must be determined is whether the injury was expected or intended, not whether the acts were performed intentionally. *Bay State Insurance Co. v. Wilson*, 96 Ill. 2d 487, 493-94, 451 N.E.2d 880 (1983). The terms "expected" and "intended" cannot be treated as synonymous since, if they were, there would be no reason to include both of them in the clause. *Bay State Insurance Co.*, 96 Ill. 2d at 494. A greater degree of proof is required to establish intent than to establish expectation. *Bay State*, 96 Ill. 2d at 494. If the actor expects or intends the injury to follow from the act, there is no coverage under the policy. However, even an intentional act will be covered under the policy language at issue if it causes an unexpected or unintended result. See *Country Mutual Insurance Co.*, 298 Ill. App. 3d at 508.

Defendants specifically assert that the trial court erred in finding that defendants intended or expected the pedicle screws to harm the underlying plaintiffs. Defendants argue that the underlying complaint does not allege that they conspired or acted in concert to injure patients receiving pedicle screws. Plaintiffs respond that defendants did intend that pedicle screws be implanted in patients in violation of FDA regulations and that by the very nature of a civil conspiracy and/or concerted action claim, defendants' actions were intentional and therefore coverage is precluded.

Plaintiffs urge this court to adopt the reasoning of the California Court of Appeals as enunciated in *Fibreboard Corp. v. Hartford Accident & Indemnity Co.*, 16 Cal. App. 4th 492, 510-11, 20 Cal. Rptr. 2d 376, 387 (1993). In that case, numerous plaintiffs sued Fibreboard, a

manufacturer of asbestos products, under a theory of civil conspiracy. The manufacturer then brought a declaratory judgment action against several insurers seeking coverage for the claims. The California Court of Appeals held:

> "[T]here is a conscious, decisionmaking element that takes civil conspiracies out of the range of behavior encompassed within the meaning of an 'occurrence.' An insured who participates in a conspiracy, even if the agreed upon behavior or course of conduct is to act negligently, cannot expect coverage for 'an accident.' In its plain, ordinary sense, an accident is 'an unforeseen and unplanned event or circumstance.' (Webster's New Collegiate Dict. (9th ed. 1984) p.49.) As a matter of law, a civil conspiracy cannot occur by accident; therefore, the policies afford no coverage for these claims. [Citations.]" *Fibreboard*, 16 Cal. App. 4th at 510-11, 20 Cal. Rptr. 2d at 387.

Our supreme court considered the nature of a civil conspiracy action in *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 64, 645 N.E.2d 888 (1994), holding:

> "[W]e reject Owens-Corning's claim that a cause of action for civil conspiracy does not arise unless one of the conspirators commits an intentional tort in furtherance of the conspiracy. While a civil conspiracy is based upon intentional activity, the element of intent is satisfied when a defendant knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner. (See *Illinois Farmers Insurance Co. v. Preston* (1987), 153 Ill. App. 3d 644; *Jones v. City of Chicago* (7th Cir. 1988), 856 F.2d 985, 992.) There is no such thing as accidental, inadvertent or negligent participation in a conspiracy. (*Jones v. City of Chicago* (7th Cir. 1988), 856 F.2d 985, 933.) A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy. (Restatement (Second) of Torts § 876, Comment *c* on Clause (a) (1977).) A defendant who understands the general objectives of the conspiratorial scheme, accepts them, and agrees, either explicitly or implicitly to do its part to further those objectives, however, is liable as a conspirator. (*Jones v. City of Chicago* (7th Cir. 1988), 856 F.2d 985, 992.) Once a defendant knowingly agrees with another to commit an unlawful act or a lawful act in an unlawful manner, that defendant may be held liable for any tortious act committed in furtherance of the conspiracy, whether such tortious act is intentional or negligent in nature." (Emphasis omitted.) *Adcock*, 164 Ill. 2d at 64.

Also see *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 134, 20 N.E.2d 242 (1999).

■ Concert of action is established "when a tortious act is done in concert with another or pursuant to a common design, or a party gives substantial assistance to another knowing that the other's conduct constitutes a breach of duty." *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 235, 560 N.E.2d 324 (1990). Neither *Adcock* nor *Smith* addressed insurance coverage issues.

■ We need not decide in this case whether coverage is precluded for all claims alleging a civil conspiracy or concert of action. In Illinois, it is well settled that if any of the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926 (1991). On appeal, defendants concede that the only allegation of the complaint for which plaintiffs conceivably provide coverage is contained in paragraph 222 of the complaint, which states as follows:

"222. Under the scheme agreed to and adopted to implement the intercompany/association conspiracy, the participants in the conspiracy acted to conceal and otherwise failed to disclose that:

a) the spine surgeons and scientists who provided instruction at these events had direct and significant financial interests in the sale of pedicle screw fixation devices through financial relationships with the manufacturers and sellers of such devices, such as stock, royalty interests and stock options;

b) the FDA had consistently refused to approve or clear any device for use as a pedicle screw fixation device because it expressly determined that existing data did not provide a reasonable assurance that such devices, when used for such purposes, were safe and effective;

c) ongoing clinical IDE trials had failed to provide sufficient, reliable evidence to demonstrate that any medical device was safe and effective when used for pedicle screw fixation; and

d) the incidence of painful and disabling complications associated with the use of pedicle screw fixation surgery was not established by any valid scientific evidence."

Defendants' assertion that the phrase "failed to disclose" in paragraph 222 alleges merely negligent conduct on their part is not well taken. Whether there is potential for coverage does not depend on the semantics of the underlying suit but, rather, on the facts alleged. *Allianz Versicherungs-AG v. Federal Insurance Co.*, 199 Ill. App. 3d 421, 423, 557 N.E.2d 313 (1990). The factual allegations made in the complaint make it clear that the failure to disclose the following was intentional: (1) the pecuniary interests of the spine surgeons as al-

leged in paragraph 222(a); (2) that the FDA had not approved the pedicle screw fixation devices as alleged in paragraph 222(b); and (3) that the ongoing IDE trials did not demonstrate that any of the devices were safe and effective as alleged in paragraph 222(c). The plain language of paragraph 222(d) shows that it could not be the basis for coverage.

Even if we were to accept defendants' assertion that the facts alleged in paragraph 222 describe merely negligent conduct, this would not prevent the application of the intentional-act-exclusion provision in the policy. In *Rubloff, Inc. v. American National Fire Insurance Co.*, No. 95 C 6845 (N.D. Ill. May 13, 1997), the district court, in applying Illinois law, affirmed summary judgment for an insurer. The court held that in comparing the allegations of the underlying complaint to the policy language, the court "must focus on the allegedly tortious conduct on which the lawsuit is based." *Rubloff*, slip op. at 5. The court found that the dispositive issue was whether the insurer had a duty to defend a breach of contract claim when the underlying complaint alleged that the breach was the result of an intentional scheme. The court held that the policy's clause excluding coverage for intentional conduct applied. *Rubloff*, slip op. at 6. The court followed the holdings of this court in *Illinois Farmers Insurance Co. v. Preston*, 153 Ill. App. 3d 644, 505 N.E.2d 1343 (1987), and *West American Insurance Co. v. Vago*, 197 Ill. App. 3d 131, 553 N.E.2d 1181 (1990).

In *Preston*, this court held that the insurer had no duty to defend, stating: "Even though the complaint does include in its third paragraph a claim for 'damages *** for tortious conduct and breach of contract,' the subsequent 22 paragraphs leading up to the allegation of defamation against the defendant in paragraph 25 expressly indicate [plaintiff's] reliance upon a conspiracy theory. *** Such plan or design obviously requires intentional involvement of the conspirator ***." *Preston*, 153 Ill. App. 3d at 650-51.

*Vago* similarly held that a court cannot ignore the actual conduct of the insured alleged in the underlying complaint, even when the complaint contains one claim that does not require an intentional act. Since the course of conduct alleged was clearly intentional and not merely negligent or accidental, the intentional act exclusionary clause applied and there was no duty to defend. *Vago*, 197 Ill. App. 3d at 138.

Defendants rely on *State Farm Fire & Casualty Co. v. Martin*, 296 Ill. App. 3d 466, 694 N.E.2d 1058 (1998), and *Country Mutual Insurance Co. v. Hagan*, 298 Ill. App. 3d 495, 698 N.E.2d 271 (1998), to support their contention that, even where intentional or reckless conduct is alleged in the underlying complaint, the underlying action may arise from an "occurrence" if the harm is unintended or unexpected.

In *State Farm Fire & Casualty Co. v. Martin*, the underlying action involved two wrongful death suits based upon Martin's involvement in an arson that resulted in the deaths of two firemen. *State Farm Fire & Casualty Co.*, 296 Ill. App. 3d at 468. State Farm filed a motion for summary judgment in the declaratory judgment action seeking a determination that it had no duty to defend or indemnify Martin in the underlying suits. The trial court found that coverage existed and denied the motion for summary judgment. On appeal, the Fifth District affirmed the trial court and held that the underlying conduct was the " 'unintended result of an intended act' " and that "the occurrence at issue amounted to an accident." *State Farm Fire & Casualty Co.*, 296 Ill. App. 3d at 472. However, our supreme court reversed on the grounds that State Farm properly denied coverage based upon the insurance policy's " 'willful and malicious' exclusion," and therefore the arguments regarding whether the deaths resulting from Martin's actions were "expected or intended" were not reached. *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 374-75, 710 N.E.2d 1228 (1999).

Country Mutual Insurance Co. involved underlying allegations of the sexual abuse of a minor by another minor. *Country Mutual Insurance Co.*, 298 Ill. App. 3d at 497. The court held for the first time in Illinois that, based on the facts of that case, an insurer may have a duty to defend an insured minor who sexually abuses another minor, and it reversed summary judgment in favor of the insurer. *Country Mutual Insurance Co.*, 298 Ill. App. 3d at 509-10. The court said, "[i]t is not entirely clear from [the definition of accident], however, what must be unexpected, the act that causes the injury or the injury itself." *Country Mutual Insurance Co.*, 298 Ill. App. 3d at 507. The court then held: "In Illinois, *** if an injury is not expected or intended by the insured, it is considered an accident." *Country Mutual Insurance Co.*, 298 Ill. App. 3d at 508.

The facts in *Country Mutual Insurance Co.* are completely inapposite to those of the present case. There, the insured was a minor who sexually abused other minors and the appellate court focused on whether the insured minor expected that his actions would harm the other children. In the instant case, the injuries suffered by the underlying plaintiffs occurred as a direct result of surgically implanting pedicle screw fixation devices in violation of FDA regulations. We reject the assertion made by the defendant associations, which are comprised entirely of orthopaedic or spine surgeons, that they did not "expect" injuries to result from these procedures.

Defendants' argument that the allegations of paragraph 222 are sufficient to impose upon the plaintiffs the duty to defend must be

rejected because the complaint clearly predicates liability on a theory of intentional misconduct. Accordingly, we affirm the trial court's order granting summary judgment in favor of Atlantic Mutual and Centennial.

■ Defendants next contend that the trial court erred in denying their motion to dismiss for failure to join necessary parties pursuant to section 2—405(a) of the Code of Civil Procedure (735 ILCS 5/2—405(a) (West 1996)). Section 2—405(a) provides in pertinent part:

> "Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the controversy arose, or whom it is necessary to make a party for the complete determination or settlement of any questions involved therein, or against whom a liability is asserted either jointly, severally, or in the alternative arising out of the same transaction or series of transactions, regardless of the number of causes of action joined." 735 ILCS 5/2—405(a) (West 1996).

Defendants specifically assert that Media/Professional Insurance Company, Employers' Insurance of Wassau, National Casualty Company and Safeco Select Markets/First Insurance Company of America are necessary parties to the action because to hold otherwise would potentially create inconsistent judgments.

■ A necessary party is one whose participation is required to: (1) protect its interest in the subject matter of the controversy which would be materially affected by a judgment entered in its absence; (2) reach a decision protecting the interest of the parties already before the court; or (3) allow the court to completely resolve the controversy. *Zurich Insurance Co. v. Baxter International, Inc.*, 275 Ill. App. 3d 30, 37, 655 N.E.2d 1173 (1995). In support of their contention, defendants rely on *Schlumberger Industries, Inc. v. National Surety Corp.*, 36 F.3d 1274 (4th Cir. 1994). In *Schlumberger*, two CGL insurers brought a declaratory judgment action seeking a determination of their rights and responsibilities regarding coverage for environmental cleanup expenses in the absence of other CGL insurers not named as parties. Schlumberger filed a motion to dismiss the declaratory judgment action and argued that the named CGL insurers failed to join other CGL insurers as necessary and indispensable parties. The trial court denied the motion. On appeal, the court held that the potential for prejudice to the insured was significant due to the possibility of inconsistent judgments if the other CGL insurers were sued in a separate action. The court stated that this could ultimately lead to less than full coverage for the insured. *Schlumberger*, 36 F.3d at 1286.

■ Defendants' reliance on *Schlumberger* is misplaced. Here, the absent insurers are not CGL insurers. Rather, the absent insurers provide "Media/Special Perils" policies and "Non-Profit/Professional Liability" policies to defendants. These types of insurance policies provide separate and different coverage than CGL policies. Therefore, we hold that there is no potential prejudice to defendants by way of inconsistent judgments or otherwise. The court could completely resolve the controversy without joinder of the other insurers by virtue of the very different nature of the insurance policies that they provide. We point out that the trial court's refusal to join the absent insurers does not preclude defendants from seeking coverage from them in a subsequent action.

■ Defendants finally contend that the trial court abused its discretion in ruling on plaintiffs' motion for summary judgment without permitting defendants to complete discovery. The trial court is afforded great latitude in ruling on matters of discovery. *Ruane v. Amore*, 287 Ill. App. 3d 465, 471, 677 N.E.2d 1369 (1997). A reviewing court will not disturb a trial court's ruling on discovery matters unless there is a manifest abuse of discretion. *Schneiderman v. Kahalnik*, 200 Ill. App. 3d 629, 637, 558 N.E.2d 334 (1990). Defendants argue that the trial court's decision to rule on plaintiffs' summary judgment motion and deny defendants' request to depose two Atlantic Mutual employees denied defendants fundamental fairness and undermined the objectives of discovery.

Defendants correctly state the rule that a reviewing court examines whether the discovery sought might lead to admissible evidence rather than whether the discovery sought would disclose admissible evidence. See *Cole Taylor Bank v. Corrigan*, 230 Ill. App. 3d 122, 128, 595 N.E.2d 177 (1992). In the insurance context generally, extrinsic facts, gathered through the discovery process, may be considered in determining whether a duty to defend is shown as long as they do not bear upon issues in the underlying litigation. *Millers Mutual Insurance Ass'n v. Ainsworth Seed Co.*, 194 Ill. App. 3d 888, 552 N.E.2d 254 (1989). However, as in the instant case, where summary judgment is sought in the context of a declaratory judgment action to determine whether an insurer has a duty to defend, the use of extrinsic evidence is inappropriate. *Bituminous Casualty Corp. v. Fulkerson*, 212 Ill. App. 3d 556, 562 (1991).

■ Defendants further argue that the trial court should have ordered plaintiffs to produce the organizational charts, claims manual and documents relating to reinsurance. The record reveals that the trial court subjected each of these items to *in camera* review. On this record, we cannot say that the court abused its discretion in denying

defendants' motion to compel discovery. See *Waste Management, Inc. v. International Surplus Lines Insurance Co.*, 144 Ill. 2d 178, 201, 579 N.E.2d 322 (1991).

Accordingly, the judgment of the trial court granting summary judgment in favor of plaintiffs is affirmed.

Affirmed.

THEIS, P.J., and HARTMAN, J., concur.