TWIN CITY FIRE INSURANCE COMPANY, Plaintiff-Appellee, v. THOMAS J. SOMER *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 1—02—0433

Opinion filed July 23, 2003.

Patrick E. Deady and Laura C. Liu, both of Hogan Marren, Ltd., of Chicago, for appellants.

Thomas M. Crisham and John P. O'Malley, both of Crisham & Kubes, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court of Cook County granting plaintiff's motion for summary judgment, holding that plaintiff, Twin City Fire Insurance Company (Twin City), had no duty to defend or indemnify defendants pursuant to the terms and conditions of the "Public Officials Errors and Omissions Liability" insurance policy it issued to Bloom Township (the Township). Plaintiff instituted this declaratory judgment action against defendants seeking a determination of its duty to defend and indemnify the insureds in an underlying action (Dieringer v. Somer, No. 99 CH 84721) (hereinafter *Dieringer*) brought against defendants by taxpayers who alleged that defendants improperly and illegally conveyed certain property acquired by the Township at tax scavenger sales.

At the trial level, Twin City moved for summary judgment with respect to its duty both to defend and indemnify defendants. Defendants filed a cross-motion for summary judgment on the issue of Twin City's duty to defend them in the *Dieringer* action. The trial court granted Twin City's motion for summary judgment and denied defendants' motion for summary judgment, finding that the underlying action against defendants was based solely upon occurrences that

were specifically excluded under the errors and omissions insurance policy.

The undisputed facts are that on June 8, 1999, Charles E. Dieringer, Jr., and Yolanda Hill, as taxpayers and on behalf of various government entities, filed a complaint for declaratory judgment, damages, and other relief against defendants, alleging that Somer, Pilota, and Grossi were involved in a fraudulent scheme, which consisted of Pilota acquiring certificates of purchases at delinquent tax scavenger sales conducted by Cook County for seven specific tax delinquent properties located within the City of Chicago Heights, Illinois. The subject properties were located at 1404-06 Park, two parcels collectively known as 1805 East End Avenue, 17th and Center Streets, 1523 Otto Boulevard, 106 East Main, and 182 East 23rd Street.

The *Dieringer* lawsuit further alleged that Pilota, in a series of what the complaint characterized as "sham transactions," assigned the certificates to the Township, which was under the control of Grossi prior to May 1997, and Somer after May 1997, both as Township supervisors. The *Dieringer* plaintiffs alleged that Pilota used the Township to briefly hold ownership of the purchase certificates, which allowed the Township, as a governmental unit, to waive the outstanding property taxes owed on those properties, and then transfer the properties to Pilota or his designees without satisfying the outstanding tax liens, thereby "cheating" the taxpayers out of thousands of dollars.

The amended *Dieringer* complaint alleged the following causes of action:

> "**Count I—Breach of Fiduciary Duty:** This count alleged that Somer and Grossi as Township Supervisors and Pilota as Township Attorney and School Board President, breached their fiduciary duties to the Township for failing to publicly post for public bidding the sale of the properties and for failing to have the conveyances approved at a meeting of the Township electors, as required by law.
>
> **Count II—Conspiracy between Pilota and Grossi**: This count alleged that Pilota and Grossi entered into an agreement and conspiracy to, and did commit the acts necessary to acquire delinquent property and avoid payment of outstanding taxes for the benefit of Pilota and clients.[1]
>
> **Count III—Conspiracy between Pilota and Somer**: This count alleged that Pilota and Somer entered into an agreement and

---

[1]During the pendency of the underlying action, the trial court dismissed all allegations in the *Dieringer* complaint that asserted any felonious or criminal conduct on the part of the defendants and dismissed the portions of the allegations in counts II and III with respect to any purported acts of conspiracy to commit felonies.

conspiracy to, and did commit the acts necessary to acquire delinquent property and avoid payment of outstanding taxes for the benefit of Pilota and his clients.

Count IV—This count sought an accounting and restitution for the property taxes which were unpaid, the fair value of the properties involved and the lost profits.

Count V—This count alleged a cause of action for fraud and sought recovery from defendants for fraudulently obtaining public funds through the scheme of acquiring the properties."

In June of 1999, after being served in the *Dieringer* lawsuit, defendant Bloom Township notified Twin City, requesting coverage under the policy. Twin City issued its denial of coverage in a letter to the Township dated August 13, 1999. In that letter, Twin City stated its reasons for denying coverage to the defendants under the policy:

"The complaint fails to plead an 'occurrence' resulting in an 'errors or omissions injury' with a request for 'damages' as required by the Insuring Agreement and defined by the policy.

Furthermore, the individual defendants do not quality [*sic*] as 'an insured' under the policy as their actions were not within the scope of their official capacities.
***

Finally, coverage for this matter is precluded by the following policy exclusions:

e. Liability arising out of any dishonest, fraudulent, criminal or malicious act or omission of any insured.

f. Liability arising out of any insured's activities in a fiduciary capacity or as a trustee or in any similar activity.
***

h. Liability arising out of any insured obtaining renumeration or financial gain to which such insured was not legally entitled; but only as respects such insured.

i. Liability arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured; but only as respects such insured."

On December 2, 1999, an order was entered in the *Dieringer* lawsuit striking all paragraphs of the complaint alleging a conspiracy to commit felonies. Based upon that order, defendants requested that Twin City reevaluate its denial of coverage and begin providing a defense in the *Dieringer* matter. However, Twin City denied coverage once again in a letter to the Township dated April 7, 2000, setting forth the same reasons for its denial of coverage.

Subsequently, Twin City filed à declaratory judgment action on August 9, 2000, seeking a declaration that it owed no duty to defendants to defend them in the *Dieringer* lawsuit. The complaint alleged that because the insurance policy did not cover allegedly

fraudulent conduct, Twin City was entitled to a declaration that it had no duty to defend or indemnify Somer, Pilota, Grossi, or the Township with respect to any claims raised in the *Dieringer* lawsuit.

After judgment was entered in the *Dieringer* lawsuit in defendants' favor, they filed a partial motion for summary judgment on May 4, 2001. The motion argued that summary judgment was proper because the allegations in the *Dieringer* lawsuit fell within the scope of coverage under the policy, that each of the defendants was an insured under the policy, that the *Dieringer* lawsuit sought damages, that the *Dieringer* lawsuit arose out of alleged "occurrences" and "errors and omissions injury," and that the acts alleged in the *Dieringer* lawsuit were not excluded by the policy. Defendants sought an order of partial summary judgment on all counts of Twin City's complaint, a declaration that Twin City had a duty to defend them in the *Dieringer* lawsuit, and an award of costs incurred in defending the two suits.

On June 1, 2001, Twin City filed a cross-motion for summary judgment and memorandum of law in support of that motion. Twin City sought summary judgment on the basis that: (1) the injuries alleged were not caused by an "occurrence"; (2) the *Dieringer* lawsuit did not allege an "errors or omissions injury"; (3) the *Dieringer* lawsuit did not allege "damages" as defined by the policy and required by the insuring agreement; (4) the individual defendants did not qualify as "insureds" under the policy inasmuch as their alleged actions fell outside the scope of their official capacities; and (5) several specific exclusions barred coverage for the *Dieringer* lawsuit.

Both motions were heard by the trial court; however, there is no report of those proceedings. The court issued its ruling, stating that it was granting Twin City's motion for summary judgment and denying defendants' motion. The court declared that Twin City did not have a duty to defend the defendants in the *Dieringer* lawsuit under the standard outlined in *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992), which stated that the court must compare the provisions in the insurance policy to the allegations in the complaint. The trial court found that the policy issued by Twin City covered defendants for doing their jobs but specifically excluded coverage for alleged acts of dishonesty, fraud, or acts arising from a breach of their fiduciary duty. The court further noted that the allegations of the *Dieringer* complaint accuse defendants of fraud and of performing their duties to achieve a result that benefitted them and not the citizenry of Bloom Township whom they were supposed to be serving in their official capacity as public officials. While defendants argued that one of the allegations of the *Dieringer* suit was that they failed to include statutorily required language in the deeds that were

issued, which was an "error or omission" covered under the policy, the court found that the "gist" of the complaint was for intentional fraud.

The issue presented for our review is whether the underlying *Dieringer* complaint filed against defendants gives rise to a duty to defend by Twin City under the terms of its "Public Officials Errors and Omissions" policy issued to defendants.

■ In appeals from summary judgment rulings, we conduct a *de novo* review. *Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons*, 315 Ill. App. 3d 552, 559 (2000). The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party. *Atlantic Mutual*, 315 Ill. App. 3d at 559. Where the pleadings, depositions and affidavits show that there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Atlantic Mutual*, 315 Ill. App. 3d at 559. If reasonable persons could draw different inferences from undisputed facts, summary judgment should be denied. *Atlantic Mutual*, 315 Ill. App. 3d at 559.

Defendants first contend that the trial court erred in granting summary judgment to Twin City based on its finding that there was no duty to defend. They argue that several of the claims in the underlying complaint allege conduct that was covered under the policy. Specifically, they argue that the policy was intended to cover the risks inherently associated with acts or omissions related to the duties and obligations of elected public officials or persons appointed to act on behalf of Bloom Township, and that the allegations in the *Dieringer* complaint involve purported acts, errors, or omissions of defendants that fall within the scope of coverage under the policy.

■ In order to determine whether the insurer's duty to defend has arisen, the court must compare the allegations of the underlying complaint to the policy language. *Outboard Marine Corp.*, 154 Ill. 2d at 125. The allegations in the underlying complaint must be liberally construed in favor of the insured. *Outboard Marine Corp.*, 154 Ill. 2d at 125. If the court determines that these allegations fall within, or potentially within, the policy's coverage, the insurer has a duty to defend the insured against the underlying complaint. *Outboard Marine Corp.*, 154 Ill. 2d at 125. The insurer can safely and justifiably refuse to defend only when the allegations clearly show on their face that the claim is beyond policy coverage, for the duty to defend is broader than the duty to indemnify. *Management Support Associates v. Union Indemnity Insurance Co. of New York*, 129 Ill. App. 3d 1089, 1096 (1984).

In *United Fire & Casualty Co. v. Jim Maloof Realty, Inc.*, 105 Ill. App. 3d 1048 (1982), plaintiffs issued a "Real Estate Agents Errors

and Omissions" insurance policy to defendant, a real estate broker. The policy provided coverage for any claim against the insured caused by any negligent act or omission of the insured but did not apply to any "dishonesty, intentional fraud, criminal or malicious act, libel or slander." *United Fire & Casualty*, 105 Ill. App. 3d at 1049.

A lawsuit was filed against defendant, alleging a breach of his fiduciary duty as a real estate broker whereby he allegedly induced plaintiffs to sell their home at a price grossly below its fair market value to an agent of defendant, who in turn resold the property at a substantial profit. *United Fire & Casualty*, 105 Ill. App. 3d at 1049. Defendant tendered his demand to defend to United, which denied coverage and refused to undertake the defense. United then filed a declaratory judgment action seeking a declaration concerning coverage and its duty to defend under the policy.

The appellate court in *United* found that the underlying complaint essentially stated one cause of action, that of intentional fraud, and that the complaint must be read as a whole in order to assess its true nature. The court further held that since the factual allegations of the complaint were premised upon only one theory of recovery, that of intentional fraud, and did not fall within the potential coverage of the insurance policy, United had no duty to defend its insured. *United Fire & Casualty*, 105 Ill. App. 3d at 1050.

In the instant case, the underlying complaint had five counts: count I—breach of fiduciary duty; counts II and III—conspiracy; count IV—seeking an accounting and restitution; and count V—fraud.

■ The Twin City policy covered the Bloom Township and highway department, and listed as included in its schedule of included/excluded facilities or operations streets, roads, highways or bridges and water-slides. Specifically excluded facilities or operations were airports; amusement parks, carnivals, or circuses; the gas department or gas utility system; hospitals and nursing homes; and the housing authority and housing projects. Items not designated meant that there was no such facility or operation at the inception of the policy. Section 1 of the policy indicated coverage under the policy and stated: "We will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of errors or omissions injury to which this policy applies. *** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under this policy."

Also included in the coverage section of the policy is a list of general exclusions. Under the general exclusions section, the following are listed, in part, as exclusions from coverage:

"e. Liability arising out of any dishonest, fraudulent, criminal or malicious act or omission of any insured.

f. Liability arising out of any insured's activities in a fiduciary capacity or as a trustee or in any similar activity.
\*\*\*
h. Liability arising out of any insured obtaining renumeration or financial gain to which such insured was not legally entitled; but only as respects such insured.

i. Liability arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured; but only as respects such insured."

"Errors or omissions injury" is defined by the policy as "injury or damage that arises out of an insured's rendering of or failure to render service within the scope of your facilities or operations including but not limited to: discrimination, not committed by or at the insured's direction; false or improper service of process; or violation of civil rights." "Occurrence" is defined by the policy as "with respect to errors or omissions injury, an act, error or omission in the conduct of your facilities or operations not listed as 'excluded' in the Schedule of Included/Excluded Facilities or Operations or covered pursuant to the terms of that Schedule relating to additional exposures." The policy does not define facilities or operations.

Section IV, entitled "Who is an insured," states as follows:
"Each of the following is an insured:
1. You;
2. Any commission, board, authority, administrative department or other similar unit operated by or under your jurisdiction;
3. Your employees and authorized volunteers, other than licensed medical, nursing, dental or paramedical personnel; but only for acts, errors or omissions within the scope of their employment or as authorized by you;
4. Any duly elected or appointed officials and members of your governing body.
*The persons or organizations described above are insureds only while acting within the scope of their duties with respect to a facility or operation that is not designated in the Schedule of Included/ Excluded Facilities or Operations as 'excluded', or covered pursuant to the terms of that Schedule relating to additional exposures."*
(Emphasis added.)

In the case at bar, the underlying complaint essentially states two causes of action, breach of fiduciary duty and intentional fraud. The complaint must be read as a whole in order to assess its true nature. *United Fire & Casualty*, 105 Ill. App. 3d at 1050. A breach of fiduciary duty and fraud were specifically excluded in items (e) and (f) of the general exclusions section of the policy. As such, we find that the allegations of the *Dieringer* complaint did not fall within, or potentially

within, the policy's coverage and that the trial court did not err in granting summary judgment to Twin City on this basis.

Defendants next contend that the trial court erred in finding that all of the claims alleged in the *Dieringer* complaint were based on intentional fraud and, therefore, excluded under the policy. They argue that various portions of the complaint were based on claims seeking declaratory judgment as to the violation of statutory procedures and requests to nullify the conveyances made by the defendants with respect to the tax properties. Defendants also argue that count IV of the underlying complaint was based on claims seeking equitable relief through an accounting and restitution and, therefore, not excluded under the policy. Finally, defendants argued that counts II and III of the underlying complaint were stricken by the trial judge and should not be read as part of the complaint.

As previously stated, the complaint must be read as a whole in order to assess its true nature. *United Fire & Casualty*, 105 Ill. App. 3d at 1050. It has also previously been stated that the two major causes of action were breach of fiduciary duty and fraud, regardless of the relief sought by the *Dieringer* plaintiffs, and were specifically excluded under the policy's general exclusions. As such, the trial court did not err in finding that all of the claims alleged in the *Dieringer* complaint were excluded under the policy because all of the factual allegations of the complaint are premised upon only one theory of recovery, that of intentional fraud and a conspiracy to commit fraud, and do not fall within the potential coverage of the insurance policy. Therefore, Twin City has no duty to defend its insured.

Lastly, defendants contend that summary judgment should have been entered in their favor because the trial court erroneously determined that no issue of material fact existed as to Twin City's duty to defendants and that the facts supported a finding that Twin City had a duty to defend. Based upon the preceding analysis, this issue need not be further addressed.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and WOLFSON, JJ., concur.