O'BRIEN AND ASSOCIATES, P.C., Plaintiff and Counterdefendant and Appellee and Cross-Appellant, v. TIM THOMPSON, INC., Defendant and Counterplaintiff and Appellant and Cross-Appellee (Walter J. O'Brien II *et al.*, Plaintiffs and Counterdefendants-Appellees; Charles Timothy Thompson *et al.*, Defendants and Appellants-Cross-Appellees; Timothy Thompson Builders, Inc., Defendant-Appellant).

Second District    No. 2—94—0792

Opinion filed July 25, 1995.

BOWMAN, J., concurring.

Michael L. Childress and Edward Eshoo, Jr., both of Childress, Eshoo, Williams & Zdeb, Ltd., of Chicago, for appellants.

Walter J. O'Brien II and Angela Imbierowicz, both of O'Brien & Associates, P.C., of Oakbrook Terrace, and Michael J. Hennessy, of Hennessy & Cihak, and Barry Locke, both of Chicago, for appellees Angela Imbierowicz, O'Brien & Associates, P.C., and Walter J. O'Brien II.

John V. Schrock and Richard J. Cochran, both of Tenney & Bentley, of Chicago, for appellees John V. Schrock and Tenney & Bentley.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendants, Tim Thompson, Inc., Tim Thompson Builders, Inc., Charles Timothy Thompson and Carolyn Thompson (collectively, Thompson), appeal the trial court's orders of August 31, 1993, November 23, 1993, and February 22, 1994, granting summary judgment in favor of plaintiffs-counterdefendants, O'Brien & Associates, P.C. (O'Brien & Associates), Walter J. O'Brien II and Angela Imbierowicz (collectively, O'Brien). Tim Thompson, Inc., brought a counterclaim against O'Brien. O'Brien & Associates, as plaintiff, cross-appeals from the trial court's order of June 8, 1994, denying its motion for sanctions under Rule 137 (134 Ill. 2d R. 137) against Tim Thompson, Inc., Charles Timothy Thompson, Carolyn Thompson and their attorneys.

Thompson contends the trial court erred in granting O'Brien's motions for summary judgment on the issues of (1) O'Brien's failure to tender the defense of Patricia and Paul Purcell's (the Purcells) lawsuit to Pekin Insurance Company (Pekin); (2) O'Brien's failure to investigate possible contribution claims against Protection Plus Security Systems, Inc. (Protection Plus), and Vac Com, Inc. (Vac Com), and then join these subcontractors as third-party defendants in the Purcell lawsuit; and (3) whether Tim Thompson, Inc., by being on constructive notice of a proposed Village of Hinsdale (Hinsdale) zoning ordinance (see *Tim Thompson, Inc. v. Village of Hinsdale* (1993), 247 Ill. App. 3d 863, 876), was collaterally estopped from arguing O'Brien breached the duty of care it owed Tim Thompson, Inc., in connection with a lawsuit Tim Thompson, Inc., filed against Hins-

dale. On cross-appeal, O'Brien & Associates contends the trial court abused its discretion in failing to impose sanctions under Rule 137. We affirm.

## PROCEDURAL ISSUES

We have taken the following motions and objections with the case. On January 6, 1995, we allowed a motion filed by the law firm of Tenney & Bentley (Tenney) and one of its attorneys, John V. Schrock (Schrock), to dismiss O'Brien & Associates' cross-appeal. Our order stated, "[m]otion by appellees [Tenney and Schrock] to dismiss cross-appeal is allowed and the cross-appeal is hearby [sic] dismissed. The appeal remains extant." O'Brien & Associates has filed a "Motion to Clarify Order Dated January 6, 1995" (Motion to Clarify). O'Brien & Associates requests we "make clear that the [c]ross[-][a]ppeal as to *** Thompson ***, Michael Childress and Edward Eshoo[,] Jr.[,] remains before this [c]ourt." Childress and Eshoo, formerly of Tenney, are principals in the firm of Childress, Eshoo, Williams & Zdeb, Ltd. (Childress). Childress then filed a "Motion to Dismiss Cross-Appeal" (Motion to Dismiss) as to Michael Childress and Edward Eshoo, Jr. O'Brien & Associates has filed a "Response to Motion to Dismiss Cross-Appeal as to Michael Childress and Edward Eshoo, Jr." (Response). Childress then lodged "Objections to Motion to Clarify Order" (Objections). Finally, Childress filed its "Motion for Leave to File and to Adopt Reply Brief [of Tenney and Schrock]" (Reply) as their reply to O'Brien & Associates' Response to Childress' Motion to Dismiss.

In ruling on these motions and objections, we have considered O'Brien & Associates' Response and Reply (including the arguments adopted by Childress from the Tenney and Schrock reply brief) and Childress' Objections. The captions of O'Brien & Associates' motion for leave to file cross-appeal, notice of cross-appeal, docketing statement and briefs do not list Edward Eshoo, Jr., and Michael Childress as appellees or cross-appellees. O'Brien & Associates' notice of cross-appeal does not request relief against Edward Eshoo, Jr., or Michael Childress. In paragraph one of the notice of cross-appeal, O'Brien & Associates distinguishes between Thompson (referring to them as "defendants") and Edward Eshoo, Jr., and Michael Childress (calling them "attorneys"). In paragraph two, O'Brien & Associates then asks that we "impose sanctions upon such *defendants* *** as the [c]ourt deems appropriate." (Emphasis added.)

■ The plain language of the notice of cross-appeal did not inform Edward Eshoo, Jr., and Michael Childress that O'Brien & Associates would pursue a cross-appeal against the Thompson attorneys. The

notice of cross-appeal, therefore, cannot be applied against Edward Eshoo, Jr., and Michael Childress. Neither did O'Brien & Associates file a separate appeal as to Edward Eshoo, Jr., and Michael Childress. Filing a timely notice of cross-appeal is a prerequisite to appellate jurisdiction. (*Harding v. City of Highland Park* (1992), 228 Ill. App. 3d 561, 572; see 134 Ill. 2d R. 303(a)(3).) Childress' Motion to Dismiss is granted. O'Brien & Associates' Motion to Clarify is denied as to Edward Eshoo, Jr., and Michael Childress; the Motion to Clarify is granted as to Thompson. We will address the cross-appeal as it relates to Thompson later in this opinion.

## SUMMARY OF FACTS

Thompson purchases real estate and builds single-family homes. The present case involves two separate transactions, *i.e.*, (1) Thompson's 1989 purchase of three residential lots in the Norman Hill subdivision in Hinsdale, and (2) Thompson's entry into a written home construction agreement to build a home for the Purcells. Each transaction ended in litigation, *i.e.*, (1) Thompson initiated an action against Hinsdale seeking declaratory and injunctive relief on November 7, 1990, and (2) the Purcells filed a lawsuit in the chancery division of the circuit court of Du Page County against Thompson.

The Hinsdale litigation focused on proposed zoning ordinances that would obstruct Thompson's ability to develop the Norman Hill lots. The complete facts of the Hinsdale litigation are set forth in *Thompson* (247 Ill. App. 3d 863). This decision figures prominently in the trial court's order in the present case.

The Purcells brought their action after fire destroyed the home being built by Thompson. They requested a variety of declaratory and equitable relief that included, *inter alia*, the issuance of a court order directing Pekin and Cory & Associates (Cory) to (1) reconstruct the home; (2) pay off the mortgage plus interest and fees; or (3) advance the Purcells all monies owed them by the three parties. Pekin issued a comprehensive general liability (CGL) insurance policy on the home Thompson was building for the Purcells. Cory acted as the broker on the CGL policy.

The Hinsdale fire department issued a report indicating the fire was started by a nail that had been driven through three groups of wires. These wires were connected to the alarm, central vacuum and intercom systems. The alarm system was installed by Protection Plus, while the vacuum and intercom systems were installed by Vac Com under a subcontract with Protection Plus. The nail acted as a "heat sink." The heat sink started a "long smoldering fire" which eventually spread and destroyed the home. According to the report,

the fire spread quickly due to the open design of the home. The architect for the Purcells' ill-fated home was Robert Mifflin. Mifflin was joined as a third-party defendant. Thompson, according to the trial court, alleged that because Mifflin negligently designed the home "with an open concept to the living area," the home burned faster than it otherwise would have. At the time of the fire, the Purcells had paid Thompson $1,117,000 of the agreed $1,250,260 price of the new home.

O'Brien is a professional service corporation engaged in the practice of law. On December 15, 1989, O'Brien "was employed" by Thompson to represent it in the Purcells' lawsuit. According to O'Brien's first amended complaint, O'Brien last rendered legal services to Thompson on the Purcell lawsuit on August 19, 1991. Additionally, the first amended complaint alleges O'Brien prosecuted the Hinsdale litigation from August 5, 1990, until September 19, 1991.

After O'Brien, the Tenney law firm and its attorneys Michael Childress and Edward Eshoo, Jr., represented Thompson. Tenney and its attorneys Michael Childress and Edward Eshoo, Jr., were listed as attorneys of record when our decision in the Hinsdale litigation was issued on July 15, 1993. Tenney attorney Schrock, Michael Childress and Edward Eshoo, Jr., worked on the present case. Michael Childress and Edward Eshoo, Jr., then left Tenney on December 30, 1993, to form the Childress firm. Tenney withdrew from the present case. On March 2, 1994, the Childress firm entered its appearance.

The present case was initiated on September 9, 1991, when O'Brien filed a complaint alleging Thompson owed the law firm over $80,000 in legal fees. On October 21, 1991, Thompson filed a counterclaim against O'Brien alleging it had committed legal malpractice in conducting the Hinsdale litigation and in defending the Purcells' lawsuit. Thompson filed its two-count amended counterclaim on November 18, 1991. O'Brien filed its five-count first amended complaint on April 21, 1993. O'Brien filed its motion for Rule 137 sanctions on March 24, 1994. The trial court declined to impose sanctions "whether there is a violation of the [r]ule or not."

## DISCUSSION

We conduct a *de novo* review in appeals of summary judgment. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102.) Summary judgment should be granted if the pleadings, depositions and affidavits demonstrate no issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Thompson,* 247 Ill. App. 3d at 871, citing 735 ILCS 5/2— 1005(c)(West 1992).

Thompson first contends the trial court erred in granting O'Brien's motion for summary judgment on the issue of O'Brien's failure to tender the defense of the Purcells' lawsuit to Pekin. To determine whether Pekin had a duty to defend Thompson against the Purcells' lawsuit, we must look to the allegations of the underlying complaint and compare them to the policy provisions. (See *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73.) The trial court properly determined Pekin would not have been obligated to defend Thompson, if "it is *clear* from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis in original.) (*Home Indemnity Co. v. Wil-Freds, Inc.* (1992), 235 Ill. App. 3d 971, 975, citing *Wilkin*, 144 Ill. 2d at 73.) If this is the case, the trial court properly entered summary judgment in favor of O'Brien.

■ We hold that the CGL policy clearly does not cover the claims made by the Purcells. The CGL policy stated "[w]e will pay those sums that the insured becomes legally obligated to pay *as damages* because of 'bodily injury' or 'property damage' to which the insurance applies." (Emphasis added.) The Purcells' complaint requested types of relief requiring the entry of a mandatory injunction. Thompson, Pekin, and Cory (or some combination of the three) would have incurred compliance costs if the trial court had issued an injunction. Such compliance costs are not considered sums payable "as damages." (*Ladd Construction Co. v. Insurance Co. of North America* (1979), 73 Ill. App. 3d 43, 47.) In its order of August 31, 1993, the trial court stated "the insurance policy clearly does not cover the type of claims that were made by Purcell against Thompson in the [c]hancery suit and therefore Pekin's duty to defend did not come into being." We adopt the reasoning of *Ladd* in affirming the trial court.

In its brief, Thompson states the trial court erred as a matter of law if it relied on *Ladd*. In support of this proposition Thompson cites *Outboard*. In *Outboard*, the supreme court stated "we find that, in light of the broad scope of this type of [CGL] policy and the popular meaning of 'damages,' the parties intended these policies to cover liability for property damage caused by an occurrence regardless of whether that liability is equitable or legal in nature." (*Outboard*, 154 Ill. 2d at 117.) Thompson contends *Outboard* renders *Ladd* "of dubious precedential value."

*Outboard* dealt with actions brought by the United States and the State of Illinois under Federal and State environmental statutes to (1) recover monies expended by government during the cleanup of Outboard's pollution; and (2) compel Outboard to take certain steps

to clean up its pollution and prevent future pollution. In *Outboard*, this court found the term "damages" ambiguous and therefore construed it against the insurer to include all costs of environmental cleanup operations. (*Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1991), 212 Ill. App. 3d 231, 242, *aff'd on other grounds* (1992), 154 Ill. 2d 90, 117.) The supreme court affirmed this holding, differing only on the point of ambiguity; the supreme court held "damages" to include unambiguously the costs of environmental cleanup operations. *Outboard*, 154 Ill. 2d at 117.

*Ladd* is distinguishable from *Outboard*. Statutory schemes designed to protect the environment blur the distinction "between payment of compensation to an aggrieved party and the expenditure of money under the compulsion of a mandatory injunction." (*Outboard*, 212 Ill. App. 3d at 241.) In reaching its decision in *Outboard*, the supreme court noted the unique nature of environmental statutes. The supreme court stated such statutes were

> "designed to allow governmental agencies flexibility in choosing the method by which they would protect our natural environment ***. [Therefore,] [t]he utility of a CGL policy would be questionable if its coverage varied according to the discretion of a governmental agency in choosing the method by which it would enforce [the environmental statute] and the type of relief it requested." (*Outboard*, 154 Ill. 2d at 116-17.)

These same considerations are not implicated in the present case. Additionally, we note the vast majority of cases relied on by the supreme court in *Outboard* dealt with governmental enforcement actions pursuant to environmental statutes. (See, *e.g., Aerojet-General Corp. v. San Mateo County Superior Court* (1989), 211 Cal. App. 3d 216, 257 Cal. Rptr. 621; *United States Fidelity & Guaranty Co. v. Specialty Coatings Co.* (1989), 180 Ill. App. 3d 378; *United States Aviex Co. v. Travelers Insurance Co.* (1983), 125 Mich. App. 579, 336 N.W.2d 838; *Minnesota Mining & Manufacturing Co. v. Travelers Indemnity Co.* (Minn. 1990), 457 N.W.2d 175.) Finally, we do not believe *Outboard*'s holding must be applied to all CGL policies because, while the supreme court declined to follow *Ladd*, the court did not overrule the decision. See *Outboard*, 154 Ill. 2d at 113.

■ Thompson's second argument is the trial court erred in granting O'Brien's motions for summary judgment on the issue of O'Brien's failure to investigate possible contribution claims against Protection Plus and Vac Com and then join the subcontractors as third-party defendants in the Purcells' lawsuit. Essentially, Thompson argues O'Brien committed malpractice because (1) O'Brien did not join Protection Plus and Vac Com immediately following the fire; (2) the

failure to join immediately the subcontractors impaired Thompson's position in settlement negotiations with the Purcells; and (3) Thompson, therefore, was forced to contribute more to the settlement of the Purcells' lawsuit than would have otherwise been required.

At best, Thompson's argument is speculative; at worst, it seeks to hold O'Brien liable for an error in judgment. Attorneys are liable for negligence only when they fail to exercise a reasonable degree of care and skill. (*Barth v. Reagan* (1990), 139 Ill. 2d 399, 406.) The law distinguishes between mistaken judgments and errors of negligence. (*Barth*, 139 Ill. 2d at 406-07.) A mere error of judgment does not subject an attorney to liability even if that erroneous judgment leads to an unfavorable outcome for the client. *Smiley v. Manchester Insurance & Indemnity Co.* (1978), 71 Ill. 2d 306, 313.

We hold that the trial court correctly entered summary judgment on whether O'Brien's failure to join Protection Plus and Vac Com was malpractice. Deciding when to join parties is left to the attorney's judgment. In its order of November 22, 1993, the trial court found that Thompson's substitute counsel, either Tenney or Childress, eventually joined Protection Plus and Vac Com. Additionally, we note architect Robert Mifflin was also joined as a third-party defendant. When O'Brien withdrew there remained sufficient time for substitute counsel to join third-party defendants. Upon withdrawal, therefore, O'Brien was relieved of any possible negligence liability. (See *Harvey v. Mackay* (1982), 109 Ill. App. 3d 582, 587 (holding that an attorney who fails to file suit within the applicable statute of limitations may not be sued for malpractice when the attorney withdrew more than a year before the limitations period ran).) The trial court correctly determined "a lawyer who timely files a suit within the statute of limitations cannot be construed to be negligent because he/she did not file it sooner in order to pick up some insurance coverage for the defendant."

■ Thompson's third contention is the trial court erred in granting O'Brien's motion for summary judgment on the issue of O'Brien's duty of care based upon Thompson's constructive notice of the proposed zoning ordinances. In its order of February 22, 1994, the trial court determined this court's "finding of notice on the part of [Thompson] is binding on them here under the principle of collateral estoppel." The supreme court has stated " 'collateral estoppel applies when a party *** participates in two separate and consecutive causes arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction.' " (Emphasis omitted.) (*Central Illinois Public*

*Service Co. v. Allianz Underwriters Insurance Co.* (1994), 158 Ill. 2d 218, 225, quoting *Housing Authority v. Young Men's Christian Association* (1984), 101 Ill. 2d 246, 252.) Thompson fully litigated the question of its constructive notice in the Hinsdale litigation. Having previously been adjudicated to be on constructive notice, Thompson may not now assert otherwise.

Thompson argues its constructive notice of the zoning ordinances and O'Brien's duty of care in connection with the Hinsdale litigation are separate questions. Because it was on constructive notice, Thompson asserts, "did not and does not vitiate the duty of care owed by O'Brien to Thompson."

The trial court determined that Thompson's constructive notice precluded finding O'Brien's acts or omissions proximately caused Thompson damage. To recover for the negligent practice of law, a plaintiff must prove (1) the existence of an attorney-client relationship; (2) a duty arising from the relationship; (3) a breach of the duty; and (4) damages proximately caused by the breach. (*Howard v. Druckemiller* (1992), 238 Ill. App. 3d 937, 941.) Thompson's amended counterclaim alleged O'Brien breached its duty of care because it "[k]new or should have known that *** Hinsdale had proposed a new zoning ordinance which, if passed, would render the Norman Hill lots unsuitable for building, *but failed to advise *** Thompson *** of the same.*" (Emphasis added.) For O'Brien to be negligent in the Hinsdale representation, the law firm's failure to inform Thompson of the zoning ordinances would have to proximately cause the builder some damage. By operation of collateral estoppel, Thompson must be considered to have knowledge of these same zoning ordinances.

Illinois law distinguishes between conditions and causation. (*Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 383.) A cause actually produces an injury, while a condition " 'provides an opportunity for causal agencies to act.' " (*Thompson,* 154 Ill. 2d at 383, quoting *Briske v. Village of Burnham* (1942), 379 Ill. 193, 199.) If an act of negligence does nothing more than create a condition in which an injury can occur, the negligence does not proximately cause the injury. (*Thompson,* 154 Ill. 2d at 383.) We hold that O'Brien's failure to inform Thompson of the zoning ordinances merely created a condition in which Thompson's own constructive knowledge brought about any damage that may have been suffered. The trial court, therefore, properly entered summary judgment in favor of O'Brien.

On cross-appeal, O'Brien & Associates contends the trial court abused its discretion in failing to impose sanctions under Rule 137. In its order of June 8, 1994, the trial court declined to impose sanctions "whether there is a violation of the [r]ule or not." If Rule 137

had not been violated, the trial court would have been without the power to impose sanctions. (See 134 Ill. 2d R. 137.) O'Brien & Associates' cross-appeal would, therefore, fail. For the sole purpose of addressing the cross-appeal, we will assume there was a violation of Rule 137. We express no opinion as to whether Rule 137 was actually violated.

We first review the pertinent law. The trial court's decision whether to impose sanctions will not be reversed absent an abuse of discretion. (*Swanson v. Cater* (1994), 258 Ill. App. 3d 157, 162.) Rule 137 imposes an affirmative duty on attorneys and litigants alike to conduct an investigation of the facts and the law before filing an action, pleading, or other paper. (*Couri v. Korn* (1990), 202 Ill. App. 3d 848, 855.) We have stated:

> "The rule requires that a party or litigant sign pleadings and other legal papers to certify that he or she has read the document, has made a reasonable inquiry into its basis, and believes that it is well-grounded in fact and in law, or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." *North Shore Sign Co. v. Signature Design Group, Inc.* (1992), 237 Ill. App. 3d 782, 789-90, citing 134 Ill. 2d R. 137.

What could be taken as a discrepancy has arisen between two of our opinions concerning when trial courts must set forth their reason and basis for Rule 137 decisions. Rule 137 states "[w]here a *sanction is imposed* under this rule, the *judge shall set forth with specificity the reasons and basis* of any sanction so imposed." (Emphasis added.) (134 Ill. 2d R. 137.) In *North Shore*, we reversed an order denying sanctions and remanded the cause for further proceedings so the trial court could "make the specific findings of fact or law to support its decision and to facilitate appellate review." (*North Shore*, 237 Ill. App. 3d at 791-92, citing *Beno v. McNew* (1989), 186 Ill. App. 3d 359, 367.) In *Rein v. David A. Noyes & Co.* (1995), 271 Ill. App. 3d 768, however, we stated "Rule 137 only requires a trial court to make specific findings when the court orders sanctions." *Rein*, 271 Ill. App. 3d at 774.

■ A trial court's decision whether to impose sanctions is entitled to considerable deference. (*North Shore*, 237 Ill. App. 3d at 790.) The foundation for this deference is the trial court's explicit findings of law or fact which allow the appellate court to make an informed and reasoned review of the sanction decision. (*North Shore*, 237 Ill. App. 3d at 790.) Therefore, we hold that whether a trial court imposes or declines to impose Rule 137 sanctions, it must set forth the reasons

and basis for its decision. Were a trial court not obliged to make explicit the legal or factual basis for its decision not to impose sanctions, the foundation for valid appellate review of such decisions would crumble. As a result, reviewing an order denying sanctions would become an *ad hoc*, inconsistent, and speculative affair. (See *Bertuli v. Gaull* (1991), 215 Ill. App. 3d 603, 606.) We do not believe, and refuse to hold, that the emphasized language of Rule 137 mandates such a result. In reaching this conclusion, we reaffirm our decisions in *Heiden v. Ottinger* (1993), 245 Ill. App. 3d 612, 621-22, and *North Shore* (237 Ill. App. 3d at 791). Additionally, we join the Appellate Court, Third District, which also requires trial courts to set forth the basis for their sanction rulings. *In re Estate of Baker* (1993), 242 Ill. App. 3d 684, 687-88 (stating "a trial court's decision on sanctions must clearly set forth the factual basis for the result reached in order to be afforded deferential treatment"); *Bertuli*, 215 Ill. App. 3d at 605-06 (citing *Smith*); *In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, 1009-10 (holding, in a case in which sanctions were not imposed, that under either Rule 137 or its precursor "explicit findings" are required). Contra *Elledge v. Reichert* (4th Dist. 1993), 250 Ill. App. 3d 1055, 1061 (holding that if sanctions are not imposed, trial court need not provide a reason for its denial).

This opinion should not be construed as questioning, criticizing, or overruling any portion of *Rein*. In discussing *Rein*, we seek to avoid confusion and clarify the trial court's responsibility in ruling on Rule 137 motions. *Rein* merely describes the express language of Rule 137; it does not hold that a trial court need only set forth the reasons and basis for its decision if sanctions are imposed.

■ O'Brien & Associates contends Tim Thompson, Inc.'s legal malpractice affirmative defenses and counterclaims were not well-grounded in fact or a good-faith argument for the extension, modification, or reversal of existing law. The trial court's order of June 8, 1994, began with a summary of its pertinent factual findings. Upon review of the record, we find the trial court sufficiently explained its decision to deny sanctions. Based on the findings set forth in the June 8, 1994, order, we hold that the trial court did not abuse its discretion in denying O'Brien & Associates' motion for sanctions.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER, J., concurs.

JUSTICE BOWMAN, concurring:

Although I agree with the result reached by the majority in this case, I write separately to express my disapproval of the majority's holding that "whether a trial court imposes or declines to impose Rule 137 sanctions, it must set forth the reasons and basis for its decision." (274 Ill. App. 3d at 482-83.) This holding ignores the plain language of Rule 137. That rule states in pertinent part:

> "*Where a sanction is imposed under this rule,* the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." (Emphasis added.) 134 Ill. 2d R. 137.

When interpreting our supreme court rules, the fundamental principles of statutory construction apply. In construing a statute, the primary goal is to ascertain the framers' intent. (*In re Illinois Bell Switching Station Litigation* (1994), 161 Ill. 2d 233, 246.) The first step in determining the framers' intent is to look to the plain meaning of the language used. (*Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 283.) "Where an enactment is clear and unambiguous *** a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations or conditions that the legislature did not express." *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 83.

In my view, the language of Rule 137 is unambiguous. It states that where a sanction is imposed, the judge must explain the reasons for his decision; the logical corollary of this is that where no sanction is imposed, he need not do so.

The majority, on the other hand, takes the position that by saying "[w]here a sanction is imposed" our supreme court meant to say "whether or not a sanction is imposed." I cannot accept this interpretation. If the supreme court had intended that trial courts make explicit findings or otherwise set forth their reasoning when denying sanctions, it could easily have included such a requirement in Rule 137. The fact that the supreme court chose not to do so should not be construed as an invitation to the appellate court to graft new requirements onto the rule. Thus, the majority's argument that applying the plain language of Rule 137 would create "*ad hoc,* inconsistent and speculative" results is irrelevant. Where the language of a rule is unambiguous, it should be given effect without inquiry into the reasons for its enactment. See *Baker v. Miller* (1994), 159 Ill. 2d 249, 257.

Moreover, even if I were to join the majority in going beyond Rule 137's plain language, my interpretation of the rule is supported by logic. It is reasonable to assume that the supreme court required

trial courts to specify the reasons and basis for an award of sanctions because of the onerous effect of such a ruling. On the other hand, the supreme court could reasonably believe that the denial of sanctions was a matter of lesser weight than the imposition of sanctions. Thus, even if I accepted the majority's implicit assumption that Rule 137 is ambiguous, my analysis would yield the same result.

Finally, I acknowledge that I concurred in *Heiden v. Ottinger* (1993), 245 Ill. App. 3d 612, and *North Shore Sign Co. v. Signature Design Group, Inc.* (1992), 237 Ill. App. 3d 782, which held that a judge denying Rule 137 sanctions is required to set forth findings in support of his decision. Upon further consideration, and in light of Rule 137's plain language, I have now concluded that this aspect of the holdings in *Heiden* and *North Shore* was incorrect.