No. 2--03--1147

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

THE GENERAL STAR INDEMNITY ) Appeal from the Circuit Court

COMPANY, ) of Lake County.

)

Plaintiff-Appellant and Cross-Appellee, )

)

v. ) No. 02--MR--316

)

LAKE BLUFF SCHOOL DISTRICT No. 65 )

and MARK VAN CLAY, Individually and in )

his Official Capacity as Superintendent, )

)

Defendants-Appellees and Cross- )

Appellants )

)

(Beth B.; and Susan B. and Tom B., ) Honorable

Individually
 and as Next Friends of ) John R. Goshgarian,

Beth B.,
 Defendants).
 ) Judge, Presiding.

_____________________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, The General Star Indemnity Company (General Star), appeals from the trial court's ruling that it had a duty to defend defendants, Lake Bluff School District No. 65 and Mark Van Clay (Lake Bluff), against certain claims brought by Beth B., Susan B., and Tom B. (the B family).  
The B family had filed claims against Lake Bluff under the Americans With Disabilities Act of 1990 (ADA) (42 U.S.C. §12101 
et seq.
 (2000)), section 504 of the Rehabilitation Act of 1973 (section 504) (29 U.S.C. §
794 (2000)), and the Individuals With Disabilities Education Act (IDEA) (20 U.S.C. §
1400 
et seq.
 (2000)).  On appeal, General Star argues that the trial court erred in granting partial summary judgment for Lake Bluff and ruling 
that General Star had a duty to defend Lake Bluff on the ADA and section 504 claims.  On cross-appeal, Lake Bluff seeks review of the trial court's decision that General Star had no duty to defend it on the IDEA claim.  Lake Bluff also appeals the trial court's denial of its request for attorney fees and penalties under section 155 of the Illinois Insurance Code (section 155) (215 ILCS 5/155 (West 2002))
, and its request for prejudgment interest.  We affirm in part and reverse in part, holding that the underlying complaint sought "damages" within the meaning of Lake Bluff's insurance policy.

I. BACKGROUND

The B family brought the underlying action on August 4, 2000, after Lake Bluff sought to place Beth in a special education program.  Beth has Rett Syndrome, a condition affecting her neurological and cognitive skills.  Beth's parents wanted her to remain in a regular classroom.  After an administrative hearing officer ruled in Lake Bluff's favor, the B family brought an action in federal district court.  They requested the same relief for the ADA, section 504, and IDEA
 claims: (1) reversal of the hearing officer's order requiring placement of Beth in a special education program; (2) placement of Beth in a regular education program; (3) reimbursement for the costs of two doctors' evaluations
; (4) reimbursement for the costs of independent clinicians' educational services; (5) attorney fees and costs; and (6) any other relief that the court deemed just.  The federal district court ruled in
 Lake Bluff's favor, the Seventh Circuit Court of Appeals affirmed the decision
, and the United States Supreme Court denied 
certiorari
.  
Beth B. v. Van Clay
, 282 F.3d 493 (2002)
, 
cert. denied
, 
537 U.S. 948, 154 L. Ed. 2d 292, 123 S. Ct. 412 (2002)
.

At the time of the suit, Lake Bluff had a "School Board Legal Liability Policy" with General Star and tendered defense of the action to it.  General Star provided $50,000 for defense costs under the policy's supplementary payments provision but denied that it was liable for any additional amounts, claiming that the B family had not sought "damages" as required by the policy.  General Star also maintained that, even if any of the claims in the underlying action were for "damages," a policy exclusion of all relief other than "monetary damages" precluded coverage.  General Star sought a declaration to this effect
 in the trial court.  
Lake Bluff counterclaimed for declaratory and other relief.

The policy provides, in relevant part:

"I. INSURING AGREEMENT

The Company will pay on behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as damages to which this insurance applies, as a result of CLAIMS first made during the period of this policy, against the INSURED by reason of WRONGFUL ACT(S) rendered in the discharge of the EDUCATIONAL ENTITY duties.

***.

II. DEFENSE AND SUPPLEMENTARY PAYMENTS

The Company shall have the right and duty to defend any CLAIM against the INSURED seeking 
damages
 to which this insurance applies, arising from WRONGFUL ACT(S) even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such investigation of any CLAIM as it deems expedient.  However, the Company shall not be obligated to pay any CLAIM or defend any suit, after the applicable limit of the Company's liability has been exhausted by payment of judgment or settlements.

The Company shall provide defense [costs] not to exceed $50,000 for CLAIM(S) seeking 
non-monetary relief
 in the area of employment disputes, 
special education
, or redistricting activities.

* * *

VII. EXCLUSIONS

The Company shall not make any payment nor defend any suit in connection with any CLAIMS made against the INSURED:

* * *

10. For Claims, demands or actions seeking relief or redress in any form 
other than monetary damages
, or for any costs, fees, including attorney's fees, or expenses which the INSURED shall be legally obligated to pay 
as a result of any adverse judgment for injunctive or declaratory relief
.  However, the Company will afford defense to the INSURED for such CLAIMS as provided in SECTION II-DEFENSE AND SUPPLEMENTARY PAYMENTS."  (Emphasis added.)

The policy's definition of "wrongful act(s)" includes any "acts or omission, neglect or breach of duty *** including actual or alleged Civil Rights violations."  The policy does not define "damages."

In the trial court, the parties filed cross-motions for summary judgment.  In discussing the motions, the trial court stated that the federal judge in the underlying suit had the discretion to award compensatory damages under the ADA and section 504.  The trial court therefore ruled as follows.  General Star owed Lake Bluff a duty to defend in the underlying complaint as to the ADA and section 504 claims, but it did not owe a duty to defend the IDEA claim beyond the $50,000 supplementary defense benefit.  General Star was obligated to pay Lake Bluff's attorney fees and defense costs in the federal district court and federal appellate court proceedings, but not the fees and costs associated with the petition before the United States Supreme Court (which related to only the IDEA claim).  Lake Bluff was not entitled to relief under section 155 or to prejudgment interest.  The trial court subsequently denied General Star's motion for reconsideration.  General Star timely appealed, and Lake Bluff timely cross-appealed.  The B family is not a party to this appeal.

II. ANALYSIS

The construction of an insurance policy provision is a question of law that can be properly decided on a motion for summary judgment.  
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 391 (1993).  We review 
de novo
 a grant of summary judgment
. 
 
General Casualty Insurance Co. v. Lacey
, 199 Ill. 2d 281, 284 (2002).

General Star argues that the trial court erred in granting summary judgment for Lake Bluff on the ADA and section 504 claims, because (1) the trial court improperly looked beyond the B family's complaint in determining that General Star had a duty to defend, and (2) none of the relief sought by the B family qualifies as "damages" under the policy.  We examine each of these contentions in turn.

A. Trial Court's Consideration of a Court's Discretion to Award Damages

The process a court uses to determine whether an insurer must defend its insured is well settled.  The court must compare the underlying complaint's allegations to the relevant policy provisions (
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 125 (1992)
)
 and liberally construe both in the insured's favor (
Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons
, 315 Ill. App. 3d 552, 560 (2000))
.  If any of the complaint's allegations fall within or potentially fall within a policy's coverage, the insurer is obligated to defend its insured.  
Outboard Marine Corp.
, 154 Ill. 2d at 125.  The duty to defend is broader than the duty to indemnify
, so the insurer may refuse to defend only where the allegations clearly show on their face that the claim is beyond coverage.  
Twin City Fire Insurance Co. v. Somer
, 342 Ill. App. 3d 424, 429 (2003).

Here, the issue is whether the B family prayed for relief that might bring the claims within the policy coverage.  The trial judge apparently granted summary judgment for Lake Bluff on the ADA and section 504 claims because, although the B family did not directly request compensatory damages, the relevant acts allow for such damages (see 42 U.S.C. §12133 (2000); 
Matthews v. Jefferson
, 29 F. Supp. 2d 525, 534-35 (W.D. Ark. 1998)) and the federal court could have, in its discretion, awarded them.  General Star maintains that the trial court engaged in improper speculation by employing such reasoning.  Lake Bluff points out that 
a complaint need show only a "potential" for coverage to trigger an insurer's duty to defend.  
Lake Bluff contends that because the ADA and section 504 allow for damages awards, the underlying action could have "potentially" resulted in such an award
.  We agree with General Star.

Central to our analysis is 
Ladd Construction Co. v. Insurance Co. of North America
, 73 Ill. App. 3d 43 (1979).  There, the Ladd Construction Company had a debris pile on the edge of its property, adjacent to Burlington Northern's railroad tracks.  The pile began to collapse and blocked a portion of the tracks.  Burlington sought an injunction requiring Ladd to remove the debris.  
Ladd Construction Co.
, 73 Ill. App. 3d at 44.
  Ladd requested that its insurer undertake its defense.  The insurer refused on the ground that the action did not qualify, under the policy, as a suit for damages for bodily injury or property damage.  
Ladd Construction Co.
, 73 Ill. App. 3d at 45. 
 Ladd filed suit against the insurer, and the trial court dismissed the complaint.  
Ladd Construction Co.
, 73 Ill. App. 3d at 44.

The appellate court concluded that the insurer did not have a duty to defend Ladd, because Burlington requested an injunction, an equitable remedy, rather than monetary damages.  
Ladd Construction Co.
, 73 Ill. App. 3d at 47-48.
  In arriving at its conclusion, the court rejected Ladd's argument that a court's inherent power to award monetary damages created a duty to defend.  It stated:

"A Federal court may well have inherent power to award money damages in lieu of equitable relief or in addition thereto.  It would be most unreasonable to speculate or assume that the Federal court would award monetary damages to Burlington and especially so in view of the fact that none were prayed for, and in addition Burlington's complaint contained specific allegations negating the effectiveness or desirability of the same.  Should we indulge in speculation as to whether a court by exercising its inherent power might award damages when none were sought and then conclude that such inherent power exists and [the] insurance company must defend an action, then we would by speculation be altering the responsibilities between parties as set forth in an insurance contract.  Moreover, a giant if not final step would have been taken in support of a proposition that an insurance company would be under an obligation to defend all suits, regardless of policy provisions or allegations contained in a complaint.  Such a result could well create havoc as to both the insurers and the insureds."  
Ladd Construction Co.
, 73 Ill. App. 3d at 48.

The court's reasoning is equally applicable to the instant case.  See also 
Board of Education, Community Unit School District No. 207-U v. Country Mutual Insurance Co.
, 121 Ill. App. 3d 124, 126-27 (1984) (duty to defend may not be based upon speculation as to a court's inherent power to award monetary damages when none are prayed for).

Lake Bluff argues that 
Ladd
 is distinguishable from this case because Burlington's allegations "negat[ed] the effectiveness and desirability" of monetary damages, and its prayers for relief would not support such an award.  Lake Bluff maintains that the ADA and section 504 claims would support a damages award and that the federal court was authorized to award damages.  Lake Bluff points out that the underlying complaint contained a prayer for any other relief that the court deemed just, and it contends that such a prayer would allow for monetary damages.

Lake Bluff's argument is without merit.  The crux of the 
Ladd
 court's analysis is that it would be improper to speculate as to whether a court would award monetary damages where none were sought.  To do so in this case would alter the parties' responsibilities under the insurance contract by rendering almost meaningless the policy provision requiring that the suit seek "damages" from the insured.  The underlying complaint's general prayer for relief is not a request for monetary damages, and we may not speculate whether the federal court would have awarded such damages absent such a request.

Thus, the trial court erred by basing its grant of partial summary judgment for Lake Bluff on the federal judge's discretion to award monetary damages.  However, 
we may affirm the trial court's decision on any basis supported by the record, regardless of the reasoning employed by the trial court.  See 
Scassifero v. Glaser
, 333 Ill. App. 3d 846, 860 (2002).  We will therefore determine whether the B family sought "damages" under the policy through its other prayers for relief
.

B. Meaning of "Damages"

Lake Bluff does not dispute that the B family's first two prayers for relief, relating to the placement of Beth in a regular classroom, do not call for "damages."  It also does not dispute that the B family's request for attorney fees and costs falls within the policy exclusion.  We therefore focus on whether the B family sought "damages" through its requests for (1) reimbursement for the cost of medical evaluations and (2) reimbursement for the cost of independent clinicians' educational services
.  We note that the B family would have been entitled to such payments had it succeeded in its case.  See 
School Committee v. Department of Education
, 471 U.S. 359, 370, 85 L. Ed. 2d 385, 395, 105 S. Ct. 1996, 2003 (1985) (hereinafter 
School Committee
)
; 
Board of Education of Murphysboro Community Unit School District No. 186 v. Illinois State Board of Education
, 41 F.3d 1162, 1169 (7th Cir. 1994).

In construing an insurance policy, the court must ascertain the parties' intent by examining the policy as a whole with regard to the risk undertaken, the subject matter insured, and the contract's purposes.  
Unambiguous words must be given their plain, ordinary, and popular meaning.  
Outboard Marine Corp.
, 154 Ill. 2d at 108.  
However, words that are susceptible to more than one reasonable interpretation are ambiguous and will be construed in favor of the insured.  
Outboard Marine Corp.
, 154 Ill. 2d at 108-09.

Several Illinois cases have examined the meaning of "damages" in the context of liability insurance policies.  As previously discussed, the 
Ladd
 court held that injunctive relief did not constitute "damages" under the applicable insurance policy.  
Ladd Construction Co.
, 73 Ill. App. 3d at 47-48.  Two other significant cases that discuss the term "damages" are 
Outboard Marine Corp.
,
154 Ill. 2d 90,
 and 
O'Brien 
& Associates, P.C., v. Tim Thompson, Inc.
, 274 Ill. App. 3d 472 (1995).

In the underlying suits at issue in 
Outboard Marine Corp.
, 
governmental agencies brought actions against Outboard to recover for the company's water pollution.  
Outboard Marine Corp.
, 154 Ill. 2d at 98.  
The agencies sought equitable relief in the form of mandatory injunctions, civil penalties, and litigation costs.  
Outboard Marine Corp.
, 154 Ill. 2d at 113. 
 Outboard tendered the defense of the actions to its insurers under its comprehensive general liability policies.  The insurers maintained that the policies did not cover the actions.  
Outboard Marine Corp.
, 154 Ill. 2d at 98.  Outboard sought a declaration that, among other things, the underlying actions sought "damages" within the policies' coverage.  In response, the insurers argued, 
inter alia
, that the underlying actions did not seek "damages" because they prayed for equitable relief rather than compensatory damages.  
The trial court granted Outboard's motion for summary judgment on the "damages" issue against one insurer.  It ruled that the technical difference between equity and law was outdated, and that the term "damages" was ambiguous.  Thus, it construed the term against the insurer and in favor of coverage.  
Outboard Marine Corp.
, 154 Ill. 2d at 100.
  This court affirmed
.  
Outboard Marine Corp.
, 154 Ill. 2d at 101.

The supreme court affirmed on other grounds, reasoning as follows.  Because the term "damages" was not defined in the policy, it had to be given its plain, ordinary, and popular meaning.  Webster's Dictionary defined "damages" as " 'the estimated reparation in money for detriment or injury sustained:  compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right.' (Webster's Third New International Dictionary 571 (1986).)"  
Outboard Marine Corp.
, 154 Ill. 2d at 115.
  This definition did not distinguish between legal compensatory damages and the costs of complying with a mandatory injunction.  
Outboard Marine Corp.
, 154 Ill. 2d at 115-16.  Also, it was of little consequence whether the remedy was in the form of legal or equitable relief.  
Outboard Marine Corp.
, 154 Ill. 2d at 116.
  The supreme court concluded that, in light of the broad scope of a comprehensive general liability policy
 and the popular meaning of "damages," the parties intended that the policies cover property damage liability regardless of whether the liability was equitable or legal in nature.  
It noted that, if the insurer had sought to exclude the cost of complying with mandatory injunctions, it could have easily included such a provision in the policy.  
Outboard Marine Corp.
, 154 Ill. 2d at 117.

A few years after the 
Outboard
 decision, this court adopted the reasoning of 
Ladd
 in 
O'Brien 
& Associates, P.C.
, 274 Ill. App. 3d 472.  In the underlying suit at issue in 
O'Brien
, a couple sued various parties after a fire destroyed their house while it was still under construction.  The couple sought, among other things, an injunction requiring certain parties to, alternatively, reconstruct the house, pay off the mortgage plus interest and fees, or advance the couple the money owed to it by all parties.  
O'Brien 
& Associates, P.C.
, 274 Ill. App. 3d at 476. 
 This court examined whether the complaint sought "damages" for "bodily injury or property damage" within the context of a comprehensive general liability policy.  
O'Brien 
& Associates, P.C.
, 274 Ill. App. 3d at 478.  
Relying on 
Ladd
, we concluded that the complaint requested injunctive relief rather than damages, and that the costs associated with complying with the injunction could not be characterized as "damages
."  
O'Brien 
& Associates, P.C.
, 274 Ill. App. 3d at 478.

In arriving at our conclusion, we distinguished
 
Ladd
 from 
Outboard
.  We stated that statutory schemes designed for environmental protection have a unique nature that blurs the distinction between monetary compensation and the expenditure of money to comply with a mandatory injunction.  
We stated that the same considerations were not implicated in 
O'Brien
.  We also noted that the supreme court in 
Outboard
 relied primarily on cases dealing with governmental enforcement actions under environmental statutes, and that while the supreme court had declined to follow 
Ladd
, it had not overruled the case.  
O'Brien 
& Associates, P.C.
, 274 Ill. App. 3d at 479.

General Star maintains that 
O'Brien
 shows that monetary payments sought by a plaintiff will not always qualify as "damages" under a liability policy.  It argues that, like the underlying plaintiffs in 
O'Brien
, the B family sought only equitable remedies and did not request legal, compensatory damages.  General Star additionally cites 
School Committee
, 471 U.S. 359, 85 L. Ed. 2d 385, 105 S. Ct. 1996.  There, the United States Supreme Court examined whether the IDEA entitles parents who have rejected a public school's proposed program 
for their disabled child, to be reimbursed for private special education expenses if a court ultimately rules that the private placement is proper.  
School Committee
, 471 U.S. at 369, 85 L. Ed. 2d at 394-95, 105 S. Ct. at 2002.  The 
School Committee
 court took issue with the defendant's characterization of such relief as "damages," stating that such relief was not damages because 
"[r]eimbursement merely requires the Town to belatedly pay expenses that it should have paid all along and would have borne in the first instance had it developed a proper" individualized education program.  
School Committee
, 471 U.S. at 370-71, 85 L. Ed. 2d at 396, 105 S. Ct. at 2003.  General Star also cites 
Walker v. District of Columbia
, 969 F. Supp. 794, 796 (1997), for the proposition that reimbursement under the IDEA is considered an equitable remedy.

We note that both 
School Committee
 and 
Walker
 
discuss reimbursement under the IDEA, while the B family sought reimbursement under the ADA and section 504, in addition to the IDEA.  Furthermore, 
Walker
 provides little guidance 
because, as Lake Bluff points out, 
while the case states that "[r]eimbursement is considered an equitable remedy," it goes on to state that "
compensatory damages beyond reimbursement
 are not provided for by the IDEA."  (Emphasis added.)  
Walker
, 969 F. Supp at 796.  
Thus, 
Walker
 equates reimbursement with compensatory damages.  Moreover, both 
School Committee
 and 
Walker
 are of limited persuasive value because unlike 
Ladd
, 
Outboard
, and 
O'Brien
, the federal courts did not define "damages" within the context of insurance policies, for which there are well-settled rules of construction.

As stated, when considering whether an insurer has a duty to defend, both the underlying complaint's allegations and the relevant policy provisions must be liberally construed in the insured's favor.  
Atlantic Mutual Insurance Co.
, 315 Ill. App. 3d at 560.
  Also, insurance policies are contracts, and the rules of contract construction apply.  Policy language
 must be read with reference to the facts at hand and in conjunction with the insured's reasonable expectations and the policy's intended coverage.  
Wallis v. Country Mutual Insurance Co.
, 309 Ill. App. 3d 566, 571 (2000).  In construing an insurance policy, we initially determine the parties' intent by looking to the policy's nature and the risks undertaken by the insurer.  
Outboard Marine Corp.
, 154 Ill. 2d at 115. 
 Here, the "School Board Legal Liability Policy" provides broad, general coverage, subject to a number of requirements and exclusions.  One such requirement is that the suit be for "damages," a word that the policy does not define.  Thus, we must give the term its plain, ordinary, and popular meaning.  
Outboard Marine Corp.
, 154 Ill. 2d at 115.  Had General Star intended that "damages" receive some other meaning, it could have defined the term in its policy.  In giving "damages" its plain, ordinary, and popular meaning, we return to the Webster's Dictionary definition cited by the 
Outboard
 court:  " 'the estimated reparation in money for detriment or injury sustained:  compensation or satisfaction imposed by law for a wrong or injury caused by a violation of a legal right.' "  
Outboard Marine Corp.
, 154 Ill. 2d at 115, quoting 
Webster's Third New International Dictionary 571 (1986).  Similarly, Black's Law Dictionary defines "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury."  Black's Law Dictionary 393 (7th ed. 1999).

As noted by Lake Bluff, the dictionary definitions of "damages" are consistent with the 
School Committee
 definition of "reimbursement"; compensating a party for a loss caused by a violation of a legal right is similar to 
belatedly paying 
for expenses that a party had a legal right to in the first place.  The dictionary definitions also encompass the "reimbursement" sought by the B family for doctor evaluations and clinician services.  
Such reimbursement would come directly through monetary payments.  Thus, the claims at issue seek relief through monetary damages, and the insurance policy exclusion for actions seeking "relief other than monetary damages *** as a result of any adverse judgment for injunctive or declaratory relief" does not apply.  
This case is distinguishable from 
Ladd
 and 
O'Brien
 because in those cases, the relief was purely injunctive.  The costs of complying with an injunction are considered "damages" only in special situations, such as the environmental litigation in 
Outboard
.  See 
O'Brien & Associates, P.C.
, 274 Ill. App. 3d at 479.  Here, in contrast, the B family sought monetary damages that did not depend on obtaining an injunction.

Accordingly, we hold that the B family's requests for "reimbursement" are requests for "damages" that bring the claims within Lake Bluff's insurance policy coverage.  The B family sought the same relief under its ADA, section 504, and IDEA claims
, so General Star had a duty to defend Lake Bluff on all three claims.  The trial court granted summary judgment for Lake Bluff on the issue of General Star's duty to defend the ADA and section 504 claims, and we affirm this portion of the trial court's judgment.  We reverse the trial court's ruling that General Star had no duty to defend the IDEA claim, and we grant summary judgment for Lake Bluff on this issue.

An insurer that breaches its duty to defend is liable to its insured for defense costs.  See 
Peerless Enterprises, Inc. v. Kruse
, 317 Ill. App. 3d 133, 148 (2000).  The trial court already awarded Lake Bluff attorney fees and costs for the underlying action's federal district and appellate court proceedings.  The only amount that remains unpaid is Lake Bluff's expenses relating to the B family's appeal to the United States Supreme Court, as it involved just the IDEA claim.  The trial court found that the reasonable attorney fees and costs for this portion of the defense was $9,901.35.  We therefore enter judgment for Lake Bluff in this amount.

C. Trial Court's Denial of Relief under Section 155 and Prejudgment Interest

We now address Lake Bluff's argument that the trial court erred in denying it relief under section 155.  Section 155 allows for the recovery of reasonable attorney fees and costs, plus a penalty, if an insurer's conduct in handling a claim is "vexatious and unreasonable."  215 ILCS 5/155 (West 2002
).  However, where there is a 
bona fide
 dispute regarding coverage, costs and sanctions are inappropriate.  
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d 369, 380 (2001).

Lake Bluff essentially argues that General Star's reliance on exclusionary provisions to deny coverage was vexatious and unreasonable.  Lake Bluff's argument is without merit.  When an insurer believes that its policy does not cover a claim, it must either defend the suit under a reservation of rights or seek a declaration of no coverage, rather than simply refuse to defend the insured.  
Peerless Enterprises, Inc.
, 317 Ill. App. 3d at 145.  Here, General Star sought a declaration that it had no duty to defend Lake Bluff.  This case presented novel issues regarding the interpretation of the term "damages," and General Star presented legitimate arguments favoring its interpretation.  Indeed, we agreed with General Star that the trial court erred in basing its grant of partial summary judgment on the federal court's discretion to award monetary damages.  Thus, a 
bona fide
 dispute existed regarding coverage, rendering costs and sanctions inappropriate.  Accordingly, we affirm the trial court's denial of Lake Bluff's motion for summary judgment on this issue.

In a related argument, Lake Bluff contends that the trial court erred in denying its request for prejudgment interest.  We will not disturb a trial court's decision to grant or deny prejudgment interest absent an abuse of discretion.  
Jones v. Hryn Development, Inc.
, 334 Ill. App. 3d 413, 418-19 (2002). Lake Bluff contends that it is entitled to prejudgment interest because General Star unreasonably and vexatiously denied it a full defense in the underlying case.  We have already concluded that General Star did not act in such a manner
.  As such, the trial court did not abuse its discretion in denying prejudgment interest.

III. CONCLUSION

For the foregoing reasons, we affirm the Lake County circuit court's grant of summary judgment for Lake Bluff on the ADA and section 504 claims.  We reverse the circuit court's grant of summary judgment for General Star on the IDEA claim, and we enter judgment for Lake Bluff on this claim for its unpaid defense costs of $9,901.35.  Finally, we affirm the circuit court's denial of Lake Bluff's requests for relief under section 155 and for prejudgment interest.

Affirmed in part and reversed in part; judgment entered.

O'MALLEY, P.J., and GILLERAN JOHNSON, J., concur.