In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-1410

ERIC BERG,

*Plaintiff-Appellant,*

*v.*

NEW YORK LIFE INSURANCE COMPANY and UNUM LIFE INSURANCE COMPANY OF AMERICA,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 7939 — **Milton I. Shadur**, *Judge.*

ARGUED NOVEMBER 6, 2015 — DECIDED JULY 27, 2016

Before WOOD, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges*.

WOOD, *Chief Judge*. Eric Berg brought this breach of contract action when New York Life, through its administrator Unum, refused to pay him disability benefits. At bottom, this case turns on the meaning of one phrase: "requires and receives regular care by a Physician." Does the clause contain a temporal element? The insurers say yes, and the district court

agreed, granting them summary judgment. But it certainly says nothing about timing on its face, and we can find no other sign that such a requirement was meant to be engrafted onto the phrase. Applying the basic principle that the language must be construed against the insurers, we reverse the judgment of the district court.

**I**

Born in 1959, Eric Berg was a long-time pit broker at the Chicago Mercantile Exchange. In 1991 and 1994, Berg bought two disability-income insurance policies underwritten by New York Life. In 2005, he started to experience a tremor in his arms and hands. The tremor interfered with his ability to write quickly and legibly, and in September 2007, the tremor forced him to leave his job. In February 2010, a neurologist diagnosed Berg with an "essential tremor," and Berg applied for total disability benefits.

Although New York Life and Unum approved Berg's claim on July 2, 2010, they designated his disability onset date as February 3, 2010, rather than September 2007. Then, in April 2012, Unum discontinued Berg's total-disability benefits. It asserted that he was eligible only for residual-disability benefits because when he applied, his regular occupation was that of an "unemployed person." Berg sued, seeking benefits dating from September 2007 and a designation of "total disability" for the purpose of future benefits. The district court granted summary judgment to the defendants. Berg appealed.

**II**

We review the district court's decision to grant summary judgment *de novo*, construing the facts in the light most favorable to the non-moving party—here, Berg. See *Jaburek v. Foxx*, 813 F.3d 626, 630 (7th Cir. 2016). Summary judgment is appropriate only when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

A

Before turning to the merits, we address the insurers' notice defenses, which are dispositive if well taken. Berg does not contest that his Notice of Claim and Proof of Loss submissions were untimely. *Country Mut. Ins. Co. v. Livorsi Marine, Inc.*, 856 N.E.2d 338, 343 (Ill. 2006). He asserts, however, that the insurers waived these defenses.

In their answer to Berg's first amended complaint, the insurers raised the argument that Berg failed to comply with the policies' Notice of Claim or Proof of Disability or Loss provisions. They reiterated this point in their response to Berg's oddly styled "motion to narrow the issues" under Federal Rule of Civil Procedure 16. This is not a use of Rule 16 that we recognize. Rule 16, entitled "Pretrial Conferences; Scheduling; Management," guides (not surprisingly) case management—it is not a tool for resolving dispositive motions, whether under Rule 12(b) or Rule 56. Perhaps that is why the district court's rulings were silent on the insurers' notice defenses. No matter: at that point, the insurers appear to have abandoned this tack. In their summary judgment motion, the insurers expressly relied upon the district court's reasoning in its previous opinions, but they did not bring up notice. We

agree with Berg, therefore, that the notice defenses are waived. See *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 800 (7th Cir. 2015) (arguments not raised in motion for summary judgment are waived).

B

On to the main event: interpreting the insurance policies. The parties agree that Illinois law governs here. Our primary goal in interpreting an insurance policy "is to give effect to the intent of the parties as expressed in the agreement." *DeSaga v. W. Bend Mut. Ins. Co.*, 910 N.E.2d 159, 163 (Ill. App. Ct. 2009). Where "the terms of an insurance policy are clear and unambiguous, they must be given their plain and ordinary meaning and enforced as written, unless to do so would violate public policy." *Id.* If a word is specifically defined in the policy, that meaning controls. *Am. Nat. Fire Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 796 N.E.2d 1133, 1141 (Ill. App. Ct. 2003). On the other hand, if the policy language is "susceptible to more than one reasonable meaning," an ambiguity exists and it will be construed against the insurer. *Gillen v. State Farm Mut. Auto. Ins. Co.*, 830 N.E.2d 575, 582 (Ill. 2005).

In determining whether a provision is ambiguous, we read the policy in light of "the insured's reasonable expectations and the policy's intended coverage." *Gen. Star Indemn. Co. v. Lake Bluff Sch. Dist. No. 65*, 819 N.E.2d 784, 793 (Ill. App. Ct. 2004). A court should not "strain to find an ambiguity where none exists." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010). Neither should it "adopt an interpretation which rests on 'gossamer distinctions' that the average person, for whom the policy is written, cannot be expected to understand." *Id.* (quoting *Canadian Radium & Uranium Corp. v. Indem. Ins. Co. of N. Am.*, 104 N.E.2d 250, 255 (Ill. 1952)). "Any

provision in a policy that limits or excludes coverage must be construed liberally in favor of the insured and against the insurer," *DeSaga*, 910 N.E.2d at 164, and must "be read narrowly and will be applied only where its terms are clear, definite, and specific." *Gillen*, 830 N.E.2d at 582.

1

The insurers argue that Berg did not meet the policy's definition of "total disability" until he saw a physician on February 3, 2010. They point out that under the policies, "Total Disability means that the Insured can not [*sic*] do the substantial and material duties of his or her regular job." The definition further stipulates that "[t]he cause of the total disability must be an injury or a sickness." Elsewhere in the policies, "Injury" is defined as "an accidental bodily injury of the Insured." In the same provision, "Sickness" is defined as "an illness or disease of the Insured."

The Injury and Sickness provision sets out several requirements. One is that "[t]he injury or sickness must be one which requires and receives regular care by a Physician." The insurers contend that because Berg did not receive "care by a Physician" for his tremor until February 3, 2010, he did not have an "illness or sickness" until that date. Because the "cause of the total disability must be an injury or a sickness," they continue, Berg was not totally disabled for policy purposes until February 3, 2010.

This syllogism might hold up in the rarified atmosphere of formal logic, but it disintegrates when exposed to the corporeal world. To begin with the obvious, neither of these provisions contains any temporal element. There is no reason to think that either of them demands that the injury or sickness

have required and received the care of a physician at any point except when the insured makes the claim. Both are written in the present tense. If the insurers had wanted the definitions to have force at any moment before the one at which the relevant claim was adjudicated, they could easily have included language to that effect. They didn't.

The insurers' reading is not even the most logical of the reasonable ones available. First, while there is no temporal language in the physician-care requirement, there is in one of the preceding requirements: that the injury or sickness "first manifest itself[] while this policy is in force." If the insurers' reading were correct, this provision would be surplusage: an injury or sickness cannot require and receive regular care by a physician before it manifests itself. "We will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous." *Pekin Ins. Co. v. Wilson*, 909 N.E.2d 379, 387 (Ill. App. Ct. 2009).

Moreover, the use of the word "one" in the proviso that "[t]he injury or sickness must be one which requires and receives regular care by a Physician" indicates that the requirement applies to the *kind* of malady that qualifies as an "injury or sickness" under the policy, not *when* it qualifies. The provision is thus best read as a description of the *class* of conditions that qualify under the policy—not a prerequisite for their onset date.

In any event, an alternate reading does not have to be the best one: for ambiguity to exist, there need only be more than one reasonable interpretation of the provision. *Gillen*, 830 N.E.2d at 582. Finding ambiguity in the possible temporal effect of the provision is unavoidable given the commandments that (1) the language must be read in light of "the insured's

reasonable expectations and the policy's intended coverage," *Gen. Star*, 819 N.E.2d at 793; (2) interpretations may not rest on picky distinctions that the average person would not understand, *Munoz*, 930 N.E.2d at 1004; and (3) "[a]ny provision in a policy that limits or excludes coverage must be construed liberally in favor of the insured and against the insurer," *DeSaga*, 910 N.E.2d at 164, and must "be read narrowly and will be applied only where its terms are clear, definite, and specific." *Gillen*, 830 N.E.2d at 582. Average insureds would presume that their benefits will flow from the date that their malady became severe enough to prevent them from working or require medical care, not when they actually went to the doctor. The provisions at issue do nothing to put them on notice that this is not the case.

Finally, construing the provisions as the insurers suggest would create the kind of absurd results we must avoid. *U.S. Fire Ins. Co. v. Hartford Ins. Co.*, 726 N.E.2d 126, 128 (Ill. App. Ct. 2000). Under their reading, the existence of an insured's "illness or injury" would depend entirely on the date the insured saw a physician for it; it would change arbitrarily with no regard for the insured's bodily condition or ability to work. Hypochondriacs might find a doctor who spots an illness at the earliest possible moment, while those who lack the resources to see doctors regularly might suffer for months or years and yet not be considered to have an illness or injury.

A few examples illustrate this point. Say, for instance, that an insured fell down the stairs to his basement, severing his spinal cord and rendering him a paraplegic. He happens also to be a doomsday prepper and thus has ample food and water for an extended period of time. He survives in the basement for six months until he is discovered. Finally, he is taken to a

physician and his care begins. According to the insurers, his injury did not exist, and he was not totally disabled, for those six months. Or suppose that an insured's hands were amputated in an industrial accident. She would need immediate care from a physician, but eventually, when there was nothing more that a doctor could do for her, she would cease receiving care from a physician. Would she not be totally disabled after that point? Or what about a woman who discovers a lump in her breast, but who cannot see a doctor for several months and only then is told she has Stage 4 cancer? In each of these cases, it is plain that the person is either disabled or ill without regard to the timing of the visit to the physician.

These hypotheticals show why it would have made no sense to impose a requirement that a physician visit determines the time when a disability commenced. Illinois courts do not read insurance policies in such a counter-intuitive way. The insurers suggest there could be some way for these unfortunate individuals to show cause for the late detection, but this is just another effort to re-write the policy. There is no show-cause exception to the "Injury and Sickness" provision; it determines basic eligibility. Show-cause provisions *do* exist elsewhere in the policies, in the Notice of Claim and Proof of Disability or Loss provisions. This is further evidence that the provisions' temporal effect is at least ambiguous, and therefore must be construed against the insurers under Illinois law. *Gillen*, 830 N.E.2d at 582. If Berg can prove that his essential tremor prevented him from performing his pit broker duties in September 2007, then he was disabled under the policies starting at that time. The facts in the light most favorable to Berg show just that.

2

Unlike the definitions of "total disability" and "injury and sickness," the policies' definition of "regular job" does contain a temporal element. "Regular Job" is defined as "[t]he occupation, or occupations if more than one, in which the Insured is engaged when a disability starts."

The insurers' argument hangs on the date when Berg became totally disabled—and thus on the outcome of our analysis in the previous subsection. They assert that because Berg first received care from a physician for his tremor on February 3, 2010, that was the first date on which he was totally disabled under the policy. They argue that because he was unemployed on that date, his "regular job" was that of "unemployed person." But, as we have just shown, the evidence favorable to Berg shows that he met the policies' definition of "total disability" when he left his job as a pit broker at the Chicago Mercantile Exchange. If that is accepted by the trier of fact, then his "regular job" under the policies was that of a pit broker.

**III**

Unum contends that it is not properly joined as a defendant to this action. But the defendants did not include this argument in their motion for summary judgment, and it is therefore waived. See *D.S.*, 799 F.3d at 800. All that remains, therefore, is to REVERSE the district court's judgment and REMAND for proceedings consistent with this opinion.